WILLARD R. PLUMMER *vs.* PENOBSCOT LUMBERING ASSOCIATION.

Penobscot. Decided May 26, 1877.

*Corporation. Way. Damages.*

The rule, that a grant of privileges is a grant of the necessary incidents to the enjoyment of those privileges, does not apply so as to embrace as incidental privileges what are expressly excepted or forbidden in the grant.

Thus: the act of 1832, c. 236, § 2, provides that the Penob. Boom Corporation (lessors of the defendants) may erect and maintain a boom across the Stillwater branch of the Penobscot for the purpose of stopping and securing logs, and branch booms wherever they may think it necessary, (between certain given points) provided said booms be so constructed as to admit of the safe passage of rafts and preserve the navigation of the river and the branches.

*Held,* 1. That the right to the reasonable use of the river to carry out the purposes of the powers granted by the charter does not include the right to exercise the powers therein expressly prohibited.

*Held,* 2. That the corporation have no right to throw a boom across the whole Penobscot, and that such erection is in direct violation of § 2.

The rule which requires one to use ordinary care to lessen the damages of an actual trespass upon him, does not impose upon him the obligation to provide against a threatened trespass or to use such care unless he have knowledge that the trespass is committed as well as threatened.

ON EXCEPTIONS AND MOTION.

CASE, in substance, that the plaintiff was possessed of about 700 M. feet of logs in the Penobscot river, fastened to posts and trees ; that the river is a public highway; that the defendants on or about July 10, 1873, carelessly and unlawfully obstructed the channel in violation of their charter, at a point just below where the plaintiff's logs were fastened; that the boom remained one month, during which time the plaintiff was prevented from running his logs down ; that during the time the market value depreciated ; that this detention was to prevent the West Branch logs from coming down the river and perhaps going to sea ; but that without this detention, the West Branch logs would have passed safely by and the plaintiff been uninjured ; that when the boom was open, the plaintiff's rafts were torn from their fastening and scattered and carried down river, whereby the plaintiff was put to great expense and damage, 1st in looking after his logs, 2nd in the depreciation of the value while the boom was closed, and 3d for logs carried away.

The defendants relied upon their charter and alleged want of care on the part of the plaintiff.

The Penobscot Boom Corporation, was incorporated in 1832 by Special Laws, chap. 236.

By Sec 2, said Corporation may erect and maintain a boom across the Stillwater branch of Penobscot river, between Birch stream and Eber's point, for the purpose of stopping and securing

logs, etc., floating upon said river, and may erect piers and side or branch booms where they may think it necessary. Provided, that said booms be so constructed as to admit the safe passage of rafts and boats, and preserve the navigation of the river. And provided also that all persons shall have the same privilege of landing rafts or logs, boards and other lumber, and fastening the same as they have heretofore enjoyed.

Sec. 3 provides that if any person shall suffer damage by the exercise of the powers herein granted to said corporation, and the amount cannot be agreed upon, the court of common pleas for Penobscot county, shall cause damages to be ascertained by a committee, with right of appeal to jury.

By act of 1854, c. 299, § 10, the defendant company was incorporated and authorized to take a lease of the rights and property of the Boom Company, subject to all the duties and liabilities of said latter company.

There was evidence tending to show that defendant company received about fifty millions of logs which had been driven down the river, and that it had been customary for years to swing a boom at this place for the protection of the logs ; that it was necessary to do so ; and it was the only manner in which they could safely hold the logs ; unless it had been done, the logs would have gone below, and filled up the river and stopped the whole navigation of the river, or would have broken through and gone to sea.

The defendants contended that they had a right to swing the boom in such a manner as was reasonable, under all the circumstances, and if necessary for the purposes authorized by the charter, if they exercised due care in so doing. The presiding justice declined so to instruct the jury ; but ruled that the maintaining of the boom, if it obstructed the passage of logs, was unauthorized ; and plaintiff, if injured, could recover. He also instructed the jury, at the request of the defendants' counsel, that the plaintiff was not required to exercise any care of the logs unless he had notice that they were in danger, and that the plaintiff could recover the boomage paid.

The jury returned a general verdict for the plaintiff for $1500, and the special findings as follows :

1. What is the amount of expense necessarily incurred by the plaintiff in the protection and preservation of his logs endangered (if they were so endangered) by the defendants' closing and opening the river ?   Ans. One hundred and fifty dollars.

2. What was the value of the plaintiff's logs unavoidably lost in consequence of the defendants' closing and opening the river, and which loss could not have been prevented by the exercise of common and ordinary care and diligence on his part ?   Ans. Nine hundred and seven dollars.

3. What was the amount of boomage which the plaintiff was compelled to pay in consequence of the defendants' obstructing the river, and which otherwise would not have been incurred ? Ans. Four hundred and forty-three dollars.

*C. P. Stetson*, for the defendants.

*J. Varney* with *W. H. McCrillis*, for the plaintiff.

DICKERSON, J.   The charter of the Penobscot Boom Corporation, the lessors of the defendant company, which authorizes it to erect a boom across the Stillwater branch of the Penobscot river for the purpose of stopping and securing logs, masts, spars and other lumber, and to erect piers and side or branch booms where they should think it necessary, at certain other specified places, contained, among other things, the following provisions:

1. "That said booms be so constructed as to admit the safe passage of rafts and boats and preserve the navigation of the river and the branches thereof, and

2. " That all persons shall have the same privilege of landing rafts of logs, boards and other lumber and fastening the same as they have heretofore enjoyed."   Special Laws of 1832, c. 236, § 2.

By the act of 1854, c. 299, § 10, the defendant company was incorporated and authorized to take a lease of the rights and property of the boom company, subject to all the duties and liabilities of the latter company.   Under that act the defendant company succeeded to their rights, duties and liabilities.

The foregoing provisions are limitations upon the corporate powers of the original corporation ; whatever else that corporation might do, as incidental to the powers expressly granted by its

charter, it could not do either of these two things, close the navigation of the Penobscot river, or interfere with the existing privileges of lumbermen in respect to the matters specified. Language could scarcely make this prohibition more imperative and explicit.

To allow the corporation to exercise the powers prohibited by its charter, even to facilitate the use of its granted powers, would be to render these limitations a nullity ; it cannot be permitted to do indirectly what its charter expressly prohibits it from doing. The right to throw a boom across the Stillwater branch of the Penobscot river does not include the right to close the navigation of the whole of the river, or to interfere with the ancient privileges of lumbermen excepted in the charter ; these privileges and the right of the public to the navigation of that part of Penobscot river, not covered by defendants' charter, must be maintained inviolate.

We do not think that the rule of law, invoked by the defendants' counsel, in respect to the right of persons using a navigable river as a highway, to a reasonable use thereof, applies in this case. That rule applies where there is no statutory prohibition of such use. There can be no reasonable use that is in contravention of the statute. The swinging of a boom across the Penobscot river though done ever so carefully, and in good faith to accomplish the purposes of the defendants' charter, was in fact in derogation of that provision of their charter which requires them "to preserve the navigation of the river." There was no question of reasonable use for the jury to pass upon, and the court very properly instructed them that the maintaining of the boom was unauthorized.

The mode of ascertaining the damages provided in § 3, of the defendants' charter, applies only to cases where the damages are sustained "by the exercise of the powers granted to the corporation." If the defendants are liable at all in this case it is not for damages thus sustained but for damages caused by their usurpation of powers prohibited by their charter.

The plaintiff was not bound to take notice of the declared purpose of the company to swing a boom across the river. Such

declaration imposed no additional duty upon him. *Non constat* that the wrongful act threatened would be committed. It is sufficient for him if he exercised ordinary care in the preservation of his logs after he had knowledge that the wrong was done. The defendants were not in a situation to require of the plaintiff a greater degree of care, nor was he bound to render it. The instructions upon this branch of the case, and, also, in regard to the measure of damages, are unobjectionable; and we do not perceive sufficient ground for sustaining the motion.

*Exceptions and motion overruled.*
*Judgment on the verdict.*

APPLETON, C. J., WALTON, BARROWS and VIRGIN, JJ., concurred. PETERS, J, concurred in the result.