## Owens *v.* Baltimore & O. R. Co.

*(Circuit Court, S. D. Ohio, E. D.* August 1, 1888.)

1. INSURANCE—MUTUAL BENEFIT SOCIETIES—BY-LAWS—PUBLIC POLICY.

The by-law of a railroad relief association requiring its members to release the railroad company from any claim for damages before applying to the association for relief, is not against public policy, as it simply puts a claimant to his election whether he will look to the railroad company or the relief association for compensation.

2. SAME—ESTOPPEL—IN PAIS—PRIVITY.

A person is not estopped from claiming compensation from the railroad company for an injury resulting from a collision by having been previously compensated by the relief association for the injury which he then untruthfully alleged was caused by malaria, jaundice, constipation, etc., as the railroad company and the association are separate corporations, and, while the former guaranty all contracts of the latter, yet the association funds were sufficient to meet all liabilities likely to arise.

3. NEGLIGENCE—AGGRAVATION OF INJURY.

When plaintiff's injuries are wholly caused by the defendant's negligence, but are aggravated by his own subsequent and independent acts, and the jury apportion the damages, he is entitled to recover to the extent of the damage without his fault, but not for that portion caused by his subsequent acts.

At Law. On motion for new trial.

*James W. Owens* and *J. A. Flury,* for plaintiff.

*Jas. H. Collins,* for defendant.

SAGE, J. The plaintiff sues for the recovery of damages by reason of injuries received in a collision of freight trains while a fireman in the employment of defendant, and resulting from the negligence of the defendant. A clear case of negligence was made out, and, aside from the question which will be hereinafter noticed, the only contest upon the trial was as to the amount of damages. The injuries received by the plaintiff were at the time apparently slight. They did not prevent him from assisting in putting out a fire, which had started in the wreck of the train,

nor from assisting in other ways about the train, nor from traveling the next day to his home, some 30 or 40 miles distant. He was then, as he testified, suffering pain from injuries received about the lower region of the ribs and the shoulder blade, and extending to the spine. He consulted a physician, who testified that he was at that time aware that there was danger of inflammation and of abscess of the liver, and that physical exertion would aggravate the injuries, and increase the danger. He advised the plaintiff to abstain from labor. But the plaintiff, stating that he depended upon his labor for his living, declined the advice, and went to work; the testimony on behalf of the defendant being that he worked as a train fireman in defendant's employ 6½ days in August and 26½ days in September, counting a run of about 100 miles as a day's work. Then his health failed him, and he was obliged to quit work, and made application for benefits to the Baltimore & Ohio Relief Association, an organization chartered by the legislature of Maryland for the purpose of affording relief in case of accident, and in case of disability by illness, to the employes of the defendant; certain officers of the defendant company being *ex officio* directors of the relief association, and the president *pro tem.* of the defendant company being also *ex officio* president of the relief association. The charter of the relief association provides that the Baltimore & Ohio Railroad Company shall guaranty the performance of the contracts made by the relief association, and, under authority given to the railroad company to extend its aid to the relief association upon such terms as the railroad company should deem proper, the company provided, by way of permanent loan to the relief association, a guaranty fund of $100,000. One of the conditions of this guaranty, as expressed in a by-law of the association, was substantially as follows: That, inasmuch as it was no part of the scheme of the relief association that any of its members should obtain double benefits in case of an injury, whenever any such claim was made against the relief association, the claimant should first file a release of the railroad company from any claim for damages. When the application was made by the plaintiff to the association for benefits, it was placed, not upon the ground that he was disabled by reason of injuries resulting from the collision, but upon the ground that he was disabled by illness resulting from malaria, (a word which seems to have a very wide, varied, and sometimes indefinite application,) from jaundice, and from constipation, and perhaps other causes. It was fortified by the certificate of the plaintiff's physician, who testifies that when he made it he knew that it was not true, but made it at the urgent request of the plaintiff and his wife, who both insisted that the claim should be made in that way. The application was honored, and the benefits under the clause or provision of the by-laws of the association relating to such cases were paid to and received by the plaintiff, to the amount of about $330. Upon the trial, the plaintiff claimed, and introduced testimony, including the testimony of his physician and of other physicians, as experts, in support of his claim, that the injury received by him at the collision was the cause of all the ailments and disabilities stated in the certificate upon which he received

benefits as above stated from the association, and that by reason of that injury an abscess of the liver was occasioned; that he suffered from an attack of jaundice, and from stammering, the latter induced by the injury to his spine received at the time of the collision; and that all these results were likely to be permanent, disabling him from labor, and probably shortening his life. Testimony of experts and others, controverting that offered by the plaintiff, was introduced by the defendant, and testimony tending to prove that the results shown were brought upon the plaintiff by his own imprudence in disregarding the advice of his physician, and working in August and September, as hereinbefore set forth. At the trial the jury were instructed with reference to their general verdict, and were also directed to answer in writing four questions proposed by the court. Those questions, with the answers, were as follows:

"(1) Were the injuries sustained by the plaintiff, to-wit, abscess of the liver, jaundice, and stammering, or any of them, caused by the collision of the freight trains of the defendant on the 18th day of August, 1883, or did he bring them upon himself by performing the work of a fireman on the defendant's road between the 18th of August and the 1st of October, 1883? If the injuries sustained were caused partly by the collision, and partly by his performing work, the jury will so state. *Answer.* The injuries sustained are due partly to the collision, and partly to the work subsequently performed by the plaintiff. (2) What amount of damage did plaintiff suffer from said injuries? *A.* Seven thousand dollars. (3) If the jury find that the injury resulted in part from the collision and in part from the plaintiff's subsequently working as fireman, how much of the damage is attributable to the collision, and how much to the plaintiff's subsequent work as fireman? *A.* Thirty-five hundred dollars. (4) What amount of damages has the plaintiff sustained by reason of said collision, without taking into account jaundice, abscess of the liver, or stammering? *A.* Twenty dollars."

The general verdict was in favor of the plaintiff for $3,520. The plaintiff moves for a judgment for $7,000, upon the special verdict in answer to the second question. The defendant moves for a new trial for the reasons—*First*, that the verdict and several findings by the jury are not supported by sufficient evidence, and are contrary to law; *second*, that the damages are excessive; and, *third*, that the court erred in refusing to give to the jury the several charges asked by the defendant. The defendant also moves for judgment in its favor upon the first question and answer, notwithstanding the general verdict. This motion is inconsistent with defendant's motion for a new trial, but it will be considered as an alternative motion.

Upon the trial, questions were raised as to the effect of the representations made by the plaintiff in his application to the relief association for benefits. The defendant's contention was that the plaintiff was estopped by these representations, and by accepting the benefits paid him in reliance upon them, from claiming damages against the defendant. The plaintiff, on the other hand, contended that the provision in the by-laws of the association requiring, as a condition precedent, the filing of a release of the defendant from any claim for damages, was void, as

against public policy. Upon these propositions the court instructed the jury as follows, as appears from the stenographic report of the charge:

"It is urged that that was an illegal arrangement; that the law does not permit an employer to stipulate for immunity from the damages which his employes may sustain by reason of his negligence. That, as a general proposition, gentlemen, is well stated. That is the law. But it does not apply to this case, for this reason: There is no stipulation that the members of the relief association shall not be at liberty to sue the Baltimore & Ohio Railroad Company for damages resulting from accidents attributable to the negligence of that company. If there were, that, in my opinion, would be an illegal stipulation. It would be against public policy. But the stipulation is, in effect, that when a member of the relief association, who is an employe of the Baltimore & Ohio Railroad Company, (and no one else can be a member,) sustains such injuries, he may make his election to sue the railroad company for damages, or, waiving that right, he may rely upon the benefits stipulated by the relief association. Now, that is perfectly legitimate and proper, and there can be no possible objection to it. I am unable to agree with counsel that the by-law applies only in cases of accident unaccompanied by negligence, and that a casualty resulting from negligence is not an accident. In a strict, technical sense that may be true, but it is not true, in my opinion, in the sense in which the word is used in the by-laws of the association, because there would be no occasion for the release of a claim for damages for injuries from an accident occurring without the fault or negligence of the railroad company, inasmuch as in such a case no liability would be incurred by, or could be enforced against, the company. The manifest meaning of the by-law is that it applies to cases where the employe might maintain an action for damages against the railroad company. It puts him to his election   He can sue the railroad company, or he can take the benefits from the relief association. This is quite as legitimate as it is to settle claims of this character out of court by private negotiations, which is done constantly, and, if fairly done, nobody thinks of questioning it."

With reference to the representations made by and on behalf of the plaintiff upon his applying to the relief association for benefits, the charge was as follows:

"Now, it is insisted by the defendant that, inasmuch as those representations were made by the plaintiff, and supported by the certificate of his physician, who testifies that he knew that they were untrue, and that he made them at the urgent request of the plaintiff and his wife, both insisting that the claims should by made in that way, that the plaintiff ought to be estopped in this suit from asserting that his injuries resulted from the collision, and did not result from the causes to which he attributed them in his application to the association for relief. Gentlemen, I cannot give my assent to that proposition, for the reason that the Baltimore & Ohio Railroad Company is one corporation, and the relief association is another corporation, and the two corporations are as separate and distinct as two individuals. The benefits received by the plaintiff were paid by the association, and out of the funds of the association, and not by the railroad company; and there is no privity to support an estoppel against the plaintiff and in favor of the railroad company. The railroad company was nothing but a guarantor, and it is laid down that a guarantor is not in privity with his principal for the purposes of an estoppel. Bigelow, Estop. 75, and cases cited. It is true that there was a possibility that the railroad company, as guarantor, might be affected by the payment of the benefits received by the plaintiff, amounting to about three hundred and thirty dollars. It was possible, because all things are possible in-

financial affairs, that claims against the association should exhaust its own funds, and compel it to draw upon the guaranty fund; but no such contingency arose, and the association, when it paid those benefits, had in its treasury, as is disclosed by the evidence, over half a million dollars, made up by the contributions and assessments paid by its members. The railroad company was not, therefore, directly involved, and the possibility that it might be ultimately involved was and is so remote that you need not consider it. The court holds that there is no estoppel in this case."

The jury were also charged that they ought to take into account the statement made by plaintiff and by his physician in support of his application for benefits, in weighing their evidence as witnesses in this cause, and, taking into account their explanations, also determine what credit to give to their evidence.

The court reaffirms these rulings, and they dispose of the points made upon the motion, excepting those relating to the findings by the jury that the plaintiff aggravated his injuries by his own acts subsequent to the collision. The finding by the jury, in answer to the third question, that the subsequent ailments of the plaintiff, to-wit, abscess of the liver, jaundice, and stammering, resulted in part from the collision, and in part from his own imprudence; that the damage was capable of apportionment, $3,500 of the subsequent damage being attributable to the collision, and the same amount to his working as fireman after the collision,—was, in the opinion of the court, fairly derivable from the evidence. The general rule is stated in 2 Thomp. Neg. 1162, to be "that contributory negligence is never looked to in mitigation of damages, but whenever it is shown to exist, it is a complete bar to the action. To this there is obviously this exception: if the injury produced by the plaintiff's negligence is capable of a distinct separation and apportionment from that produced by the defendant's negligence, it should be excluded by the jury in estimating the damages, and they may assess against the defendant those damages which followed separately from his act. The rule, stated another way, is that the person injured is not entitled to recover for any enhancement of damages produced by his own want of care." This statement of the law must, however, be taken with a proper understanding. Where the negligence of the plaintiff contributes to the original cause of the injury it is fatal to his claim for damages, unless it appears that the defendant, notwithstanding the plaintiff's negligence, might have avoided the cause of the injury, and failed to do so. In this cause, the finding of the jury was, in substance, that the injury sustained by the plaintiff resulted solely from the negligence of the defendant, (and in this the testimony was altogether and overwhelmingly in favor of their finding,) but that it was subsequently, by acts of the plaintiff entirely distinct and separate from the *causa causans*, aggravated. In other words, the jury found that the damages resulting solely from the collision were, immediately, $20, and subsequently by development of the injuries then received, $3,500 additional; and further, that the plaintiff, by his own acts subsequent to and entirely disconnected from the collision, aggravated those injuries to his damage in the additional sum of $3,500. And the jury, by their general verdict, said that

the defendant was liable for the damages sustained by the plaintiff at the time of the collision and caused thereby, and those resulting subsequently therefrom, but not for any aggravation by his own acts of those injuries and the damages resulting from such aggravation.

Now, turning to section 19 of Beach on Contributory Negligence, we find a statement of the law exactly in point:

"When the subsequent negligence of the plaintiff contributes, not to cause, but to aggravate, the injury, it will not, as has been hitherto suggested, avail the defendant as a defense, for the obvious reason that howsoever much it may have increased the damage, it did not cause the injury, and the defendant's negligence did cause it, which is the ground of his chargeability."

In support of this statement of the law, see *Gould* v. *McKenna*, 86 Pa. St. 297; *Secord* v. *Railroad Co.*, 5 McCrary, 515; *Sills* v. *Brown*, 9 Car. & P. 601; and *Greenland* v. *Chaplin*, 5 Exch. 243, 247. In *Greenland* v. *Chaplin*, POLLOCK, C. B., said:

"The man who is guilty of a wrong, who thereby produces mischief to another, has no right to say: 'Part of that mischief would not have arisen if you had not yourself aggravated the injury which my negligence caused;' and whenever the injury produced by the plaintiff's negligence is capable of a distinct separation, an apportionment must be made, and the defendant held liable only for such part of the total damage as his negligence produced."

So, again, in Shear. & R. Neg. § 35:

"Where the plaintiff by his own fault aggravates his injury, and increases the extent of his damage, but has not actually contributed to the whole injury which he has suffered, he is entitled to recover to the extent of the damage which he has suffered without his fault, but not for that portion of the damage to which he has thus contributed."

To same point, *Sherman* v. *Iron Works Co.*, 2 Allen, 524; *Wright* v. *Railroad Co.*, 20 Iowa, 195. And in Cooley, Torts, 683, find the following:

"It is no answer to an action that the injured party subsequent to the injury was guilty of negligence which aggravated it. The negligence that will constitute a defense must have occurred in producing the injury It is nevertheless the duty of the party injured to take care that the damage shall be as light as possible." Citing *Plummer* v. *Association*, 67 Me. 363; *Willmot* v. *Howard*, 39 Vt. 447; and *Hathorn* v. *Richmond*, 48 Vt. 557.

In *Saunders* v. *Railway*, 98 E. C. L. 887, the person injured had disregarded the advice of his physicians to abstain from business for two years, and had because of such disobedience become permanently incapacitated from doing business, whereas, if he had rested, he would probably have regained his health. The court refused to disturb a verdict in his favor for compensatory damages.

These authorities are clear and to the point. They correctly state the law applicable to this case.

The defendant's objection that the general verdict of the jury is not sustained by the evidence is not well founded. The evidence was conflicting, as it generally is when experts are called to testify, and the case was peculiarly one to be left to the jury to decide. Upon the evidence the court would not be warranted in setting aside the verdict apportioning the damage. The plaintiff's motion for judgment for $7,000, and

the defendant's motion for a new trial, and for judgment notwithstanding the verdict, are overruled. Judgment will be entered upon the general verdict for the plaintiff for $3,520, with interest from the first day of the trial term.