Jenner, J.
Joel Bryant, the plaintiff below, was a fireman in the employ of the Baltimore & Ohio Nailroad Company, on the first day of October, 1886, on a locomotive attached to a freight train composed of about twenty loaded cars. On the morning of that day his conductor and engineer received a telegraphic order from the train dispatcher at Newark to run wild from Shawnee to Newark. In obedience to said order, the train started at five o’clock in the morning, and, as it was rounding a curve near Junction City, was flagged, and at about 1200 feet from the point of the curve was wrecked, and Bryant was seriously injured while in the line of his duty.
He brought his action for damages, charging that the injury resulted from the carelessness and negligence of the train dispatcher and the engineer of his train; The railroad company answer, admitting that the accident occurred at the time and place stated; but deny all negligence on its part. As a second defense, they aver that prior to the date of the accident, Bryant was a member of an organization known as the *333 “ Baltimore and Ohio Employes’ Relief Association,” the object of which was to provide for its members while disabled by accident, sickness, or old age, and at their deaths for their families. It further avers that it contributed largely to the funds of said association; bore all the expenses necessary for the proper management of its affairs, and, through its officers and agents, had general supervision, management and control of the affairs of the association. It further avers that it guaranteed, in writing, to each member thereof, all the benefits afforded by said association; and that one of the rules of the association was to the effect that the benefits should not be payable or paid when the member entitled to damages because of an accident to him, or makes a claim against the defendant, until there be first filed with the committee of management of the association a release, releasing the defendant company from such damages, signed by the member injured. They further aver that after the injuries were received by plaintiff as set forth in his petition, that he received on the 10th day of November, 1886, the sum of $23.00 from said association; on the 10th day of December, 1886, $26.00; on the 10th day of January, 1887, $23.00, and on the 10th day of February, 1887, $30.00, and that each time he received said respective sums, by an instrument of writing signed by him and delivered to said association, he released and discharged the railroad company from all claims and demands for damages, indemnity, or other form of compensation, and that, by reason of receiving said several sums, and signing and filing said releases, it is claimed by the plaintiff in error that the defendant is estopped and barred from prosecuting this action.
As to said several sums of money received by him, Bryant, in his reply, says that the payments of November 10th, and December 10, 1886, were received by him when he was very sick from his said injuries, and, on that account, unable to transact business, unable to read, hardly able to sign his name, and partially blind and paralyzed, and that, while so sick and disabled, the agent of the plaintiff in error and the agent of *334 the said association, paid him the sums of money mentioned in the answer, and that if he signed any such paper as is mentioned in the answer, it was under the mistake of the plaintiff as to the contents of the same, that he was simply signing a mere receipt for the money. That said mistake was caused and he was induced and misled into signing the same, believing it was a simple receipt for the money, and nothing else, and so did not read the same.
As to the receipt of the money on the 10th of January, 1887, he says in his reply that the agent of the defendant, and of the association, asked him to sign a paper, which should be sent on to get his voucher for his insurance benefits, and there informed him and gave him to understand, that said paper was a mere receipt for the money, and nothing more. That, by reason of the said acts, and information of the said agent of the defendant and said association, he did not .read said paper, and that he was ignorant of the contents of the same, and he signed it because they so misled him into believing that it was a simple receipt for the money only.
The facts, briefly stated, are these: The track needing some repairs near Junction City, on the line of the railroad) the section boss, with a gang of men, early in the morning, took up three rails, in order to make certain repairs. The rules of the company required him, when making such repairs, to send a flagman out in each direction, a distance of fifteen hundred yards. This rule was known to him; he neglected to comply with it. His excuse is, that he knew the time of the regular trains, and that it was a small job, and, by using his entire force, he expected to soon have it completed. After he had taken up the rails, he heard the whistle of this freight train, approachiug from the south, at a distance of about three-quarters of a mile. He sent one of his men on a run to flag it, and, as it came around the curve, at a distance of about twelve hundred feet from the place where the rails had been removed, he flagged the train with his hat, and the accident resulted.
*335 There was evidence tending to show that, in railroad man-: agement, it was the common practice to order extra trains by. telegram, called “wild trains,” to run with reference to scheduled trains, so as to keep out of their way. There was also evidence tending to show that it was the practice for regular trains to carry a white flag, when extras were following; but, on the morning of the day of the accident, no regular trains had passed down, and no notice could be given of this extra train, by white flag. It was not possible for the train dispatcher to notify all section bosses along the line, that this wild train was expected over the road; nor was that necessary, if it were possible, if the section bosses would but remember and obey the rule to send flagmen out, fifteen hundred yards, before attempting to remove rails.
The trial judge submitted certain questions to the jury as to the acts of negligence that caused the injury to Bryant, and they answer that it was the negligence of the train dispatcher and the engineer of Bryant’s train. We are at a loss to know what act of negligence the train dispatcher could be chargeable with. Railroad companies must have the right to send extra trains over their roads in cases of an emergency, and they may also be able to do this only by telegram. Nor would it seem to be reasonable to expect them to notify their numerous employes on and along the line of the road.
The negligence of the section boss is admittedly gross. To take up the rails over which trains were likely to run at any minute, without the precaution of sending flagmen out, as the rules required, is without excuse; and this was the cause of the wreck of the train and the injury to Bryant.- If not the immediate or approximate cause, it certainly was not very remote.
The negligence charged to the engineer seems to be this: That he did not keep as careful a lookout as his duty required; that he might have seen the flagman at an earlier moment than he did, and if he had seen him, he could have notified Bryant not to go down and throw in coal — the position it *336 seems he was in at the time of the accident. We are not willing to say that there may not have been some evidence tending to show that the engineer could not have kept a more careful outlook than he did; and slight though the evidence is, it maybe sufficient to justify the jury in finding some negligence on the part of the engineer.
If the plaintiff below was entitled to recover for the injuries received by him, we have no hesitation in saying that the verdict was not too large.
This case was tried twice to a jury, and, on the last trial, was tried with all the care that the importance of the questions deserved.
The issue raised by the second defense of the answer and the reply thereto has never been passed upon by our Supreme Court, and we regard it of much importance to railroad companies and their employes.
Bryant was a member of the Baltimore & Ohio Employes' Relief Association at the time of his injury. He received from the association certain sums of money, as he admits in his examinátion. When he received the first two payments, he says he was sick from his injuries, and unable to transact business, unable to read, and hardly able to sign his name. As to the third payment received by him, for which he signed a release as required by the rules of the association, releasing the plaintiff in error from all liability when he received said sum, he says he understood it was a mere receipt and signed it. Yet, he was a member of the association; presumed to understand its objects; was able to read and write, and signed this release, he says, without reading it, believing it was only a simple receipt for the money.
What was the legal effect of the defendant in error being a member of this association and signing this release of January 10, 1887, when he was able to transact business; was out and around, and could read and write, if no fraud was perpetrated upon him, and no attempt made to prevent his reading the release?
*337 It is clear, under the authorities, that a railroad company will not be permitted to stipulate against liability on its part for acts of negligence resulting in injury to an employe. See Railway Company v. Spangler, 44 Ohio St. 471. We will npt discuss the question here, but after the accident happened, after the liability of the company occurred, with Bryant a member of this relief association, and this one of the conditions of membership: “The benefits herein promised shall not be payable nor paid when the contributor or any person entitled to damages because of the accident to him, whether resulting in death or not, has or makes a claim against said company, or any of the companies operating its branches or divisions, until there be first filed with the committee a release, satisfactory to them, releasing said company from such damages, signed by all persons entitled to the same.” Here is an opportunity for the injured person to elect whether he will accept the benefits of the association, or rely upon his action against the railroad company for damages. With this right of election reserved to him, we think it cannot be claimed that it is against public policy. It must be noted that the benefits offered by the relief association are guaranteed by the Baltimore & Ohio Railroad Company.
At the time these several releases were signed by Bryant, was he in such a condition of mind and body as to be bound by his acts ? If he was at the time suffering great bodily pain as the result of this accident, and in no condition to consider the effect of the paper writing, or unable to intelligently determine whether he desired to elect to accept the benefits of the association or rely upon his action for damages, it could hardly be claimed that he should be bound by these writings.
This question, we think, was properly submitted by the tria judge to the jury. See Bliss v. New York Central & H. R. R. Co. (This case was decided by the Supreme Court of Massachusetts, January 20, 1894, and repported in Am. Cor. Rep., Vol. 9, 484); Dixson v. Railroad Co., 100 N. Y. 170; Butler *338 v. Regents of the University, 32 Wis. 124; Schultz v. Chicago and Northwestern R. R. Co., 44 Wis. 638 ; 20 Enc. of Law, 762, and authorities cited. Mullins v. Railroad Co., 127 Mass. 86.
The charge so clearly states the law on the questions submitted to the jury as we understand them, that we hesitate to criticise it in any particular. The jury are instructed that if this accident happened by reason of the negligence of the section boss in removing the rails, and failing to send flagmen out, as required by the rules.of the company, then Bryant cannot recover, for the reason that the section boss was his fellow-servant. This undoubtedly is the law in Ohio, and it seems to us the jury might very well have found that the accident was the result of negligence of this fellow-servant.
As to these releases, the court, among other things, charged the jury as follows: “ The receipts and releases, claimed to have been executed by the plaintiff, have been read before you, and the evidence as to their execution by him, and the circumstances under which they were signed, if signed at all, by the plaintiff. If he could have read these releases, the law presumes him to have known their contents when he signed the same, unless he did not read them on account of statements made to him as to their contents. But this presumption may be rebutted by plaintiff, and it only requires a preponderance of the evidence to overcome this presumption, and he may, if he can, show you by parol evidence that he did not know the contents of these releases when he signed them.” We think this part of the charge was too favorable to the plaintiff below. He could both read and write, and had the opportunity to read these releases, and then to simply say that he did not know the contents of them because he did not read them, but relied upon the statements of the agent off the company, we think was not a sufficient excuse for his failure to read them.
But the court did charge the third request of the plaintiff in error, which is as follows: “ That the jury should take into *339 consideration the paper in evidence called an application for membership in the relief association, 'and if they find from that paper, and the constitution attached, that plaintiff agreed to release the defendant, in case he accepted relief from the relief association, from a claim for damages, the fact that he was told that the other papers were mere receipts for money, if that be a fact, or that he supposed it was such receipt only, does not entitle him to avoid said releases.”
J. H. Collins and Kibler & Kibler, for plaintiff in error.
S. M. Hunter, for defendant in error.
While we think the jury were justified in finding from the evidence that when the plaintiff below signed the releases for the first and second amounts of money received by him, he was not in a condition to be bound thereby, yet, we think that when he signed the release dated January 10,1887, taking his own statements as to how he came to sign it, we cannot understand how the jury, under the charge of the court as given on this subject, could fail to return a verdict for the defendant below. The admitted facts as to the signing of this last release, and the receipt of the money of that date entitled the defendant below, as we think, to a verdict in its favor.
We are sustained in these conclusions by the following authorities :
Spitze v. B. & O. R. R. Co., 75 Maryland, 162; Leas v. Penna. Co. (Appellate Court of Ind.), 37 N. E. Rep. 423; Ringle v. Penna. Co. (Supreme Court Penna.), 30 Atlantic Rep. 492; Owens v. B. & O. R. R. Co., 35 Fed. 715.
With some hesitation we would sustain this judgment for the reasons we have stated, if it were not for the fact of Bryant being a member of this relief association, and his having signed the release of January 10, 1887 ; but we hold that, as to that release, the verdict is against the evidence and against the law as charged by the court below. For these errors the judgment is reversed.