## OLDENBURG *v.* OREGON SUGAR COMPANY.

[ 65 Pac. 869.]

HARMLESS ERROR IN ADMITTING EXHIBIT.*

1.   An error in admitting oral or documentary evidence is cured by a proper instruction to disregard such evidence.

---

*NOTE.—On this point see *State* v. *Birchard*, 35 Or. 484, and *State* v. *McDaniel*, 39 Or. 161.—REPORTER.

POND AS PART OF REALTY—EVIDENCE.

2.  A pond on a tract of land is part of the property, and under an allegation of injury to the land it is competent to show the use of the pond.

CROSS-EXAMINATION IS LIMITED BY THE DIRECT EXAMINATION.

3.  A cross-examination can not be extended to matters not connected with the direct examination; thus, where plaintiff's witnesses testified in relation to objects noted on a map of the premises which plaintiff introduced in evidence, defendant can not test the accuracy of their knowledge by means of another map that has not been offered in evidence.

ASSESSMENT LIST AS EVIDENCE OF VALUE—IMPEACHMENT.

4.  Under a statute requiring property owners to furnish the assessor with a sworn list of their taxable possessions, whereupon the officer values them for taxation, such a list is not competent evidence of a previous contradictory statement for the purpose of impeachment.

RELEVANCY OF TESTIMONY UNDER THE PLEADINGS.

5.  It is not competent to examine or cross-examine witnesses on matters not in issue under the pleadings—proofs must follow the issues.

SCOPE OF CROSS-EXAMINATION.

6.  Though, under Hill's Ann. Laws, § 837, an adverse party may cross-examine a witness as to any matter stated in his direct examination, or connected therewith, a witness in an action for damages to realty caused by diversion of a stream having testified that floods brought down driftwood, a question whether they also brought down boulders and rocks is not proper cross-examination, in the absence of a showing that the witness testified in regard to boulders in his direct examination.

DIVERSION OF WATERCOURSE—DAMAGES—INSTRUCTIONS.

7.  In an action for damages caused by erecting a dam in a river, which was washed away shortly thereafter, evidence of injuries to the land after the dam was washed away is not erroneously admitted, where the court instructs that such evidence was admitted only on plaintiff's theory that the dam turned the channel of the river permanently against plaintiff's land, but that, if the dam did not so change the channel, such evidence as to subsequent injuries could not be considered.

DAMAGES WHICH INJURED PARTY MIGHT HAVE AVOIDED.

8.  Where an action is brought to recover for injuries immediately resulting to land by the construction of a dam, and not for any injury that might thereafter occur, evidence as to whether or not plaintiff had made any effort to protect the land from erosion is immaterial.

WITNESSES—PROPRIETY OF IMPEACHMENT.

9.  A statement by the manager of a corporation under suit for injuring the premises of another that he had not been notified that damage was being done and had not promised to go and examine the place, is a relevant and material statement as to which impeaching testimony may be received.

FOUNDATION FOR IMPEACHMENT.

10.  Where a witness recalls the conversation referred to in an impeaching question, whether the question was broad enough is immaterial, since it has accomplished its purpose of recalling to the witness' attention the occasion referred to.

CROSS-EXAMINATION OF WITNESSES.

11. A witness who has testified as to the change of the channel of a stream can not be cross-examined as to the injury to adjoining land caused by the change.

EXAMINATION OF WITNESS.

12. A witness having stated that he had no knowledge on a certain point, the court properly refused to permit further questions regarding it.

From Union : ROBERT EAKIN, Judge.

Action by L. Oldenburg against the Oregon Sugar Company, a private corporation. From a judgment in favor of plaintiff, defendant appeals.    AFFIRMED.

For appellant there was a statement of errors over the name of *Mr. Charles H. Finn,* a brief over the name of *Huntington & Wilson,* and an oral argument by *Mr. Bela S. Huntington.*

For respondent there was a brief and an oral argument by *Mr. L. A. Esteb.*

MR. JUSTICE MOORE delivered the opinion.

This is an action to recover damages for an injury to real property. Plaintiff alleges that he is the owner of certain land in Union County, bordering on Grande Ronde River ; that the defendant, a corporation, unlawfully placed a dam in the channel of said stream, whereby the water was deflected, and overflowed his premises, washing away the earth, and destroying his irrigating ditches, and carrying off his fences, to his damage in the sum of $5,800. The defendant, having denied the material allegations of the complaint, averred that prior to the injury complained of the said river had been diverted from its natural bed, and overflowed its land, to prevent the washing away of which a temporary dam was placed in the new channel, whereby the water was returned to and flowed in its accustomed bed, and that

said dam was carried out before plaintiff's injury occurred, which was occasioned by a freshet in said river. The reply having put in issue the allegations of new matter in the answer, a trial was had, resulting in a verdict for plaintiff in the sum of $900, and, judgment having been rendered thereon, the defendant appeals.

1. The bill of exceptions discloses that in the several issues raised during the progress of the trial, and discussed herein, exceptions were duly saved to the rulings of the court; that testimony was introduced to show that in March, 1899, the defendant constructed of piling, brush, rocks, and gravel, a dam about one hundred and sixty feet in length, extending entirely across the channel of the Grande Ronde River, and, remaining therein about twenty-four hours, the water of that stream was deflected, and, flowing against the plaintiff's land, washed away about two acres thereof, destroyed his ditches, and deprived him of the use of the water for irrigation. The defendant contends that this dam was placed in the new channel and served only to turn the water around the end of the obstruction into the natural bed, thereby protecting its lands from further encroachments, while plaintiff insists that this barrier was constructed in the original channel. The plaintiff introduced in evidence a deed to certain real property owned by him, and was permitted to testify that certain buildings were erected and other improvements made upon the land described therein; but the court, having discovered that said premises were not embraced within the boundaries mentioned in the complaint, withdrew the deed, saying to the jury, "This deed is out of the case, and should not be considered by the jury for any purpose." Several witnesses testified in relation to the improvements made upon the real property described in said deed as elements from

which they estimated the value of the injured premises before and after the erection of the dam, and it is maintained by defendant's counsel that the withdrawal of the deed did not take from the jury the consideration of such testimony, and that the error committed by the introduction of the deed was not cured by such withdrawal.

The transcript shows that the premises described in the complaint contain about forty-three acres, and that plaintiff also owned about three fourths of an acre not mentioned in the pleadings, upon which were erected certain buildings and other valuable improvements. The deed to this small tract having been admitted in evidence in the manner indicated, several of plaintiff's witnesses testified that they knew the character of his land, and that the value thereof prior to its injury was about $350 to $400 an acre, but that since it was damaged it was not worth more than $150 to $175 an acre.   In view of this, and at defendant's request, the court charged the jury as follows : "I instruct you that you are not to take into consideration in this case any testimony regarding the property included in the plaintiff's second deed, relating to the tract containing less than an acre of ground, nor of the buildings and other improvements thereon, in estimating damages, if you so estimate or find that there was any damage done to plaintiff; for the same is not claimed or alleged in this action to be the property of plaintiff, and its value, or any value it or its improvements add to the other property claimed, can not be considered in this action for any purpose." The buildings erected upon this small tract of land were not injured or destroyed by the backwater from the dam constructed by defendant, and, this being so, the instruction given at the defendant's request evidently cured all error committed by the admission of the deed and of such testimony.

2.   Plaintiff, having referred to a pond upon his land, was asked, "What do you use that pond for ?" An objection to this question on the ground that it was incompetent, irrelevant, and immaterial having been overruled, he answered, "For subirrigation." It is maintained that, the complaint having made no mention of a pond, the court erred in permitting an answer to this question. The contention is without merit, however, for the pond was a part of the real property described in the complaint, and the injury thereto was an injury to his estate.

3.   The plaintiff introduced in evidence a map of his premises, and he and his witnesses testified in relation to the objects noted thereon, and upon their cross-examination the defendant's counsel exhibited a map of the *locus in quo*, prepared by its engineer, and asked them if it was correct, and, if not, wherein it failed to delineate the particular objects which it is alleged were injured by the construction of the dam ; but the court sustained objections to these questions on the ground that the defendant's map had not been offered in evidence. It is argued that, these witnesses having testified as to their knowledge of the location and relative position of the objects noted upon plaintiff's map, the defendant had the right, and should have been allowed, to test the accuracy of their knowledge, for the purpose of showing that the map which they had identified was incorrect. The point insisted upon is undoubtedly true, but, the defendant's map not having been offered in evidence, the cross-examination of these witnesses was properly confined to the map introduced in evidence by the plaintiff and identified by them.

4.   The plaintiff, having testified that the value of his land before the injury thereto was $200 per acre, said on cross-examination that he never valued it as low as $20

an acre, whereupon defendant's counsel sought to contradict him by introducing in evidence his sworn statement prepared for and filed with the county assessor, showing that the real property was assessed at $1,500 ; but the court rejected the proffer. The statute requires the assessor to swear every person subject to taxation to give a true account of his property according to the best of his knowledge and belief : Hill's Ann. Laws, § 2759. The taxpayer, by this provision, is required to furnish a list only of his taxable property, whereupon it is made the duty of the assessor to determine the value thereof : Hill's Ann. Laws, § 2752 ; Laws, 1893, p. 6. The plaintiff had nothing to do with placing the value upon this property, and was not responsible for the estimate placed thereon by the assessor.

5. Having testified that he placed a wing dam in the river to turn the water into his ditch just prior to the injury complained of, the plaintiff was asked on cross-examination, " Do you say that the dam did not turn the water over on the land of defendant and Mr. Young, and overflow their said lands?" But the court sustained an objection to the interrogatory. It is not alleged in the pleadings that the plaintiff by any means caused the water to overflow the defendant's land, and hence the question propounded to him on this subject was immaterial.

6. Frank Nessley, plaintiff's witness, having testified that during every flood before defendant's dam was built more or less driftwood was lodged on the bar in the river, the following question was propounded to him on cross-examination : "And the large floods of the spring generally carry boulders and rocks with them, do they not?" But an objection thereto was sustained. The bill of exceptions does not show that this witness on his direct

examination had given any testimony in respect to boulders, and, while the adverse party may cross-examine a witness as to any matter stated in his direct examination, or connected therewith (Hill's Ann. Laws, § 837), we are not prepared to say that the question was proper on cross-examination.

7.  The testimony having tended to show that a freshet in the river carried out the defendant's dam about twenty-four hours after it was completed, it is contended that it was error to permit plaintiff to show the nature and extent of the injuries to his real property up to the time this action was tried.  It is argued by defendant's counsel that the court, by permitting the plaintiff to introduce testimony tending to show that his premises had been injured by the water since the dam washed out, thereby assumed that the jury might infer that the erection of the dam permanently changed the channel of the stream, that there was no testimony introduced at the trial which would warrant such an assumption, and that the existence of the dam for a few hours across a portion of the stream was not such a continuing trespass as to justify the conclusion that it was the cause of washing plaintiff's premises during the subsequent freshets.  To illustrate the exception relied upon, the court, in overruling an objection to the question, "Has any of this land been washed away since last spring by this river?" propounded to plaintiff's witness, said, "I will permit this question to be answered for the purpose of disclosing the extent of the injury that resulted from the turning of the river," and thereafter instructed the jury as follows :  "The court permitted evidence to go before you as to the washing or damage done after defendant's dam was removed ; but this was only permitted upon the plaintiff's theory of the cause of the damage,— that is, that the

dam of defendant turned the channel of the river permanently over against plaintiff's land, and by reason thereof continued to wash the land. But, if the dam was not the cause of the change of the channel of the river over against the lands of plaintiff, then no washing or damage to plaintiff's land occasioned or occurring after the said dam went out, if it did go out, can be considered by you. Neither can you consider any washing (if any) that occurred before the erection of the dam." The court, upon this branch of the case, further instructed the jury, in effect, that, if the defendant placed a dam in the natural channel of the river, whereby the water thereof was diverted and flowed against plaintiff's land, causing it to be washed away, he was entitled to recover such damage as the proof showed he had sustained ; but, if they should find that the dam was placed in a new channel of the river, and turned the water into its accustomed bed, and the dam was so constructed as to do no damage to the plaintiff, or if his injury was not the direct result of the dam, they should find for the defendant. This action is not predicated on the assumption of the continuance of the wrong, and the damage sought to be recovered is limited to the injury sustained at the time thereof, and not extended so as to include damages which might result to said land from floods in the river occurring subsequent to such injury. The testimony tends to show that the channel was changed before the dam went out, and that this altered condition of the river caused the injury complained of ; and, this being so, whatever damage the jury might consider from the testimony that plaintiff had sustained as a direct result thereof, they were authorized to award. The testimony, so far as it related to the real property, having been limited to the damage sustained at the time of and before the dam went out, and not extended to that which might thereafter

result, or permanent damages, no error was committed in admitting the testimony objected to : *City of Nashville v. Comar*, 88 Tenn. 415 (12 S. W. 1027, 7 L. R. A. 465).

8.    Joseph Barton, appearing as defendant's witness, was not permitted, on his direct examination, to answer the following question : "Do you know of any attempt or act upon plaintiff's part, since the destruction of the acre and a half that is sued for in this action, to prevent further destruction of his land by that stream?" The defendant's counsel thereupon offered to prove by this witness that he was a civil engineer of experience, and had knowledge of the effect and resistance of water, and that for the sum of $100 plaintiff could have placed a permanent breakwater on his land that would have prevented the destruction thereof, and would thereby avoid any future injury thereto ; but the offer was rejected. If the cause of action had been based upon a recovery of damages for injury to the real property caused by freshets in the river since the dam was carried out, error might possibly have been predicated upon the court's refusal to permit the question to be answered ; for the rule is well settled that a party injured by the tort of another must take active measures to prevent a continuance of the wrong, and he will be entitled to the damage which he has sustained, and the reasonable expense incurred in mitigating the injury.    But if, by his carelessness, he allows the damages to be unnecessarily augmented, the increased loss that could have been avoided by the performance of his duty falls upon him, and prevents a recovery thereof from his adversary :    1 Sutherland, Dam. § 88 ; 8 Am. & Eng. Ency. Law (2 ed.), 605e.    This action having been brought to recover for the injury immediately resulting to plaintiff's premises by the construction of the dam, and not for any injury that might thereafter

occur by reason of the freshets washing away the unprotected banks, it was immaterial whether or not plaintiff had made any effort to protect his land from erosion. While the plaintiff had a remedy in equity to prevent an injury to his estate which constituted a destruction thereof (*Mendenhall* v. *Harrisburg Water Co.* 27 Or. 38, 39 Pac. 399), he was not required to anticipate and provide against a threatened trespass (*Reynolds* v. *Chandler River Co.* 43 Me. 513 ; *Plummer* v. *Penobscot Land Assoc.* 67 Me. 363), and hence the offer to prove that he could have prevented the damage which the construction of the dam caused was immaterial.

9. The plaintiff, appearing as a witness in his own behalf in rebuttal, his counsel said to him : "I will get you to state to the jury if you ever made any demand on Mr. Barton, and, if so, where and when and how?" to which, over the defendant's objection and exception, he answered : "Yes, sir ; I was there twice. When I first went there, his bookkeeper was there, and he said Mr. Barton was out. The second time I went there I found Mr. Barton, and I said : ' I wish you would go over there. The dam you put in the river has done me an awful lot of damage. My irrigating ditch is all washed out.' And I says : ' I wish you would go over, and see what we can do. I would like to get some lumber to fix it.' He says, ' I will go over there.' He said he would go over there, and he never went over there." Barton, as a witness for the defendant, on cross-examination was asked the following question: "I will get you to state if, about the month of July, when you had your office in one of the rooms in the bank there in the City of La Grande, if Mr. Oldenburg didn't call on you, and in the presence of your clerk there, you and them being there together, he told you of the damages that had been caused by this dam, and re-

quested you to go down there, and look at the damages
that it had caused, and settle with him for it, and that you
at that time agreed to go down there, and make estimate
of it, or words to that effect?'' to which he answered,
'' No, sir.'' The plaintiff was then asked : ''At the time
Mr. Caviness was constructing that dam across the Grande
Ronde River, I will get you to state if, in answer to the
following question propounded by you to him, 'Mr. Cav-
iness, if you put that dam in there it will ruin me?' Mr.
Caviness made the reply that he knew that it was liable
to, but that they had told him to put it in, and, while he
had advised them to go up to the bridge, and cut it down
straight, that they had thought they would put it in early
in the spring, and take chances on it, or words to that
effect,''—to which the witness answered that he did.
This question had been propounded upon the cross-exami-
nation of defendant's witness John Caviness, who ad-
mitted having the conversation at the time and place
specified, but denied using the language attributed to
him. It is contended by defendant's counsel that the
court erred in permitting the plaintiff to attempt to im-
peach Barton in an immaterial matter, and Caviness
without having laid a proper foundation therefor. Of
these in their order.

The rule is of universal application that, in order to
impeach a witness by proof of his contradictory state-
ments, it is necessary that such statements refer to some
subject-matter relevant and material to the issue : 1
Greenleaf, Ev. (15 ed.) § 462. And the question as to
whether a matter is collateral, within the meaning of
this rule, may be solved by a correct answer to the in-
quiry : Is the cross-examining party entitled to prove it
in support of his case? 29 Am. & Eng. Ency. Law (1
ed.), 794. Barton was the manager of the defendant
corporation, and the testimony sought to be elicited from

him, had he given affirmative answers to the questions propounded, related to the subject-matter of the action, to wit, the damage sustained by the construction of the dam ; and, the witness being so closely related to the defendant, which must speak by its agents, the subject-matter was material, and the plaintiff was authorized to show that the defendant had notice of the injury which it caused, and an opportunity to repair the damage sustained.

10.    Caviness having acknowledged that he remembered the circumstances of time and place and the conversation to which his attention was called, there was no necessity for laying a broader foundation, the only object of which is to enable the witness to refresh his memory in respect to the matter to which his attention is called, and to allow him an opportunity to explain it.

11.    Frank Nessley, on direct examination, testified that for about thirty-two years he had known the bed in which the Grande Ronde River flowed, and that a change in the channel thereof, caused by defendant's dam, had washed away plaintiff's land, and that the part remaining, being unprotected, was liable to be injured by freshets in the stream.    On cross-examination by defendant's counsel he said that the river had widened some above the line of defendant's ditch, but below it had changed, and flowed over land now owned by the defendant, whereupon he was asked : "And it finally destroyed, by change from the natural channel, about five or six acres of that land, did it not?"    An objection to this interrogatory having been sustained, it is contended that error was thereby committed.    The change in the channel of the river was material, and the witness on cross-examination had testified in respect thereto ; but the extent of the injury which had been caused thereby to defendant's premises was not material.

12.    Charles Nessley testified on direct examination that the change in the channel caused by the defendant's dam was washing away plaintiff's land, and on cross-examination, his attention having been called to the maps introduced in evidence by the respective parties, he said he had never before seen plaintiff's map, and knew as much about the defendant's map as he did of the other, whereupon he was asked : ''Is it not a fact that the natural channel of the river, as long as you knew it, was the north channel, running in the direction, and making the turn in the direction, as indicated upon this map?'' An objection to this question having been sustained, it is contended that the court erred in this particular. It is not certain which map was referred to in the interrogatory, but this uncertainty is of no consequence, for it does not appear that the witness was acquainted with either, and, this being so, the indication of the turn in the river, and the direction in which it flowed, as noted thereon, rendered the question objectionable, and no error was committed in refusing to permit him to answer it.

These considerations lead to an affirmance of the judgment.    Affirmed.