# Glenn *v.* Hatchett.

*Action by Trustee under appointment of Foreign Chancery Court, against Stockholder of Corporation.*

1.  *Surrender and cancellation of stock.*—A resolution adopted by a corporation—that is, by the stockholders directly, or ratified by them after its adoption by the board of directors—authorizing the surrender and cancellation of one half of the number of shares subscribed for, so that five per cent. paid on the whole number shall be considered as ten per cent. paid on the half retained, is valid and binding as between the corporation and the stockholders who avail themselves of it; and it is equally binding on a trustee appointed in a deed of assignment for the benefit of creditors, executed by the corporation on its subsequent insolvency, or a trustee appointed in his stead by a court of equity; but creditors may, *it seems,* set aside such surrender and cancellation, as a fraud on their rights.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by John Glenn, suing as trustee under appointment by the Chancery Court of Richmond, Virginia, against Wm. T. Hatchett, as surviving partner of the late firm of Metcalf & Hatchett; and was commenced on the 14th December, 1886. The action was brought to recover eighty per cent. on twenty shares of stock in the National Express & Transportation Company, a corporation chartered under the laws of Virginia, in December, 1865, being the amount of two installments called for by decrees of said Chancery Court in Virginia, and alleged to be unpaid on twenty shares of stock which Metcalf & Hatchett held by assignment from the original subscribers. Among other defenses, the defendant interposed a special plea, alleging full payment of ten of the twenty shares subscribed for, and the surrender and cancellation of the other ten, under and pursuant to a resolution adopted by the corporation. This resolution was set out in the plea, and it is also set out in the opinion delivered in the case. The court below overruled a demurrer to this special plea, and its judgment on the demurrer is here assigned as error.

WM. S. THORINGTON, for appellant, cited *Morris v. Glenn,* 87 Ala. 628; *Glenn v. Scott,* 28 Fed. Rep. 804; *McKim v. Glenn,* 66 Md. 87; *Glenn v. Williams,* 60 Md. 119; Cook on

[Glenn v. Hatchett.]

Stockholders, § 281 ; *G. L. & H. Ins. Co. v. Kamper*, 73 Ala. 343 ; *Hoag v. Sawyer*, 17 Wall. 610 ; *Scoville v. Thayer*, 105 U. S. 143 ; *Hall v. Railroad Co.*, 6 Ala. 744.

SEMPLE & GUNTER, *contra*, cited *Cooper v. Frederick*, 9 Ala. 738.

CLOPTON, J.—This case involves different questions from those considered in *Glenn v. Semple*, 80 Ala. 159, and subsequent cases of the same character reported in the 87th vol. Alabama Reports.

On September 20, 1866, the National Express & Transportation Company, incorporated under the laws of Virginia, executed to three named persons an assignment of all property, rights, credits and effects of every kind, for the benefit of creditors. On a bill filed by some of the creditors in the Chancery Court of the city of Richmond, Virginia, plaintiff was, by the decree of the court, appointed trustee in the stead of the persons to whom the assignment was originally executed. The court, having ascertained that eighty per cent. of the subscriptions to the capital stock remained unpaid, decreed December 14, 1880, an assessment and call of thirty per cent., and March 16, 1886, a further assessment and call of fifty per cent. of the par value of the stock, for the payment of the debts of the company. Plaintiff, as such trustee, brings the action to recover the assessments from defendant, as surviving partner of Metcalf & Hatchett, who became the owner of twenty shares of the stock by transfer from original subscribers. The defense may be thus stated: In March, 1886, the company unanimously adopted a resolution, of which the following is a copy : "That so much of the subscribers' subscription to the stock of the company, on which five per cent. has been paid upon the subscription to said stock, may be reduced one-half in order to meet the full requisition of ten per cent. (inclusive of the five per cent. called for on the 20th January, 1866). Further, that any subscriber who has paid in five per cent. only on his subscription, may be allowed to reduce his subscription, so that ten per cent. will appear to have been paid thereon." On April 25, 1866, Metcalf & Hatchett, relying on this resolution, and with special reference thereto, became the assignees of twenty shares of the stock, one-half of which they surrendered to the company on the same day in pursuance of the resolution, and received a certificate for ten shares; and on December 16, 1886, fully paid both assessments on the ten shares, with interest. Plaintiff, having declined to plead further, after the demurrer to the plea setting up these facts was sustained, judgment was rendered for defendant.

[Glenn v. Hatchett.]

Appellant contends, that the act of the corporation accepting the surrender of, and cancelling the shares, was *ultra vires*, and did not have the effect of releasing Metcalf & Hatchett from liability on the unpaid subscription for the shares so surrendered and cancelled, and refers us to the case of *Glenn v. Scott*, 28 Fed. Rep. 804. That was a suit, brought by the plaintiff in this case, to recover the first assessment; in defense of which, a surrender and cancellation of shares under a similar resolution was set up ; and it was ruled that the transfer of the shares to the company was *ultra vires* and void as to the plaintiff in the suit, representing the creditors and the company. The report of the facts in that case states that the resolution was adopted by the board of directors. When referred to the facts, the decision simply declares the general rule, that corporate directors have no inherent power to accept from a subscriber a transfer of his shares, and, without the consent of the other stockholders, release him from liability, or make any arrangement with him whereby they shall lose the benefit of his subscription.

The plea in this case avers, that the resolution was unanimously adopted by the *company;* that is, as we interpret it, by the company distinct from the directory, its agents, whose general authority, in the absence of power conferred by the law or stockholders, extends merely to the supervision and management of the regular and ordinary business of the corporation. Under the plea, defendant would have been required to prove the adoption of the resolution by the shareholders; proof of its adoption by the board of directors, unless accompanied by proof of authority conferred, or ratification, would not have met the requirements of the plea.

A subscription to the capital stock of a corporation not only constitutes a liability to the company, but is also an engagement with the other stockholders, for whom and creditors, if any, the capital stock is held in trust. Though there are cases which assert that the company may release one or more stockholders on proper consideration, without the consent of the others, unless the rights of creditors intervene, the general rule is, that a corporation will not be allowed to single out one or more stockholders, and release them from liability. ' Such release is regarded as a fraud upon the non-consenting stockholders, as well as the creditors. But a subscription contract may be rescinded, and the subscriber released from liability, with the assent of the subscriber and the other stockholders, if the intervening rights of creditors are not offended—in other words, such agreement is binding on the company.

In *Scovill v. Thayer*, 105 U. S. 143, the question was,

[Glenn v. Hatchett.]

whether an agreement between the subscribers and the company, made at the time of the issue of the stock, was valid as to the company and creditors. The agreement was, all the subscribers having paid the same amount on their shares, that the amounts paid should be credited to the subscribers, and the balance unpaid credited by "discount," and certificates for full paid shares delivered to the subscribers; substantially the same agreement embodied in the resolution of the National Express & Transportation Company. It was held that the agreement was binding on the company, but a fraud on the creditors, which they could set aside, and the stockholders be required to pay their stock in full. As to the binding force of the agreement upon the company, Woods, J. says : "It is conceded to have been the contract between him [the subscriber] and the company, that he should never be called upon to pay any further assessments upon it. The same contract was made with all the other shareholders, and the fact was known to all. As between them and the company, this was a perfectly valid agreement. It was not forbidden by the charter, or by any law or public policy; and as between the company and the stockholders, was just as binding as if it had been authorized by the charter."

As we understand the decision, the same doctrine is asserted in *Cooper v. Frederick*, 9 Ala. 733. A resolution, to the effect that the stockholders might relinquish one-half of their stock, and the payments previously made accounted for as if made on the stock retained, provided the stockholders paid all the calls subsequently made by the directory, was held to be legal and valid. Ormond, J. says of the resolution: "It is a contract entered into by the corporation with its members, which does not carry on its face any marks of illegality or impropriety." That case seems to have been generally understood as upholding the power of the directors, of themselves, to make such a transaction, and opposing the general rule. This misunderstanding has arisen from the fact, that the resolution was adopted by the directory, and the failure to observe the fact that it was subsequently ratified at a meeting of the stockholders. When the opinion is considered in connection with the facts, it merely declares that such a resolution adopted by the directors, when ratified by the stockholders, is an agreement between them and the corporation binding on the company, and, all having the same privilege, it is not a fraud upon any of the stockholders. The head-note does not fully express the principle of the opinion. What would have been the effect, if the resolution had not been ratified by the stockholders, or if it had appeared there were creditors, was not decided.

The resolution being in the nature of an agreement entered into by the corporation and the subscribers to the stock, which has been executed by the surrender and cancellation of the shares, and binding on the company, the corporation could not have maintained an action to collect the subscription for the shares so surrendered and cancelled; neither can the plaintiff, as representing the company. The agreement and surrender and cancellation of the shares in pursuance of the resolution, were not *ultra vires* as to the creditors, but a fraud offending their intervening rights. If necessary to satisfy their claims, they could have set them aside, and required the subscribers to pay their full subscription. Whether the plaintiff, deriving all his rights and power from the assignment executed by the corporation, can maintain a suit for that purpose, it is unnecessary to decide, and we express no opinion. Until the transaction is set aside, by appropriate proceedings instituted by proper parties, plaintiff can not maintain an action at law to recover the subscription for the shares surrendered and cancelled. *Scovill v. Thayer, supra.*

Affirmed.