# Harrison *v.* Alabama Midland Ry. Co.

*Action for Damages for Personal Injury to Employe.*

[DECIDED JAN. 17, 1906, * 40 So. REP. 394.]

1. *Appeal; Questions Reviewable; Motion to Strike.*—On appeal a motion to strike certain pleas and the rulings thereon are not reviewable unless such motion, pleas and rulings are set out in the bill of exceptions.

2. *Same.*—When the record does not show that demurrers were filed to pleas after amendment, the sufficiency of such amended pleas cannot be reviewed.

[Harrison v. Alabama Midland Ry. Co.]

3. *Railroads; Relief Department; Ultra Vires.*—The establishment by a railroad company, or the assisting to establish, a relief and hospital department where injured employes may be treated medically and paid weekly benefits, with a stipulated sum to the family of employe in case of death, is not ultra vires.

4. *Master and Servant; Employer's Liability Act.*—The employer's liability act has no effect on the general principle of the validity of the establishment by railroads of hospital and relief funds for injured employes.

5. *Release; Attack for Fraud; Return of Consideration.*—Where an employer pays to an injured employe a sum certain in satisfaction of a claim for personal injuries, such employe may not attack such settlement as fraudulent without an offer to return the sum so received.

*Rehearing denied April 3, 1906.

Appeal from Montgomery City Court.

Heard before Hon. A. D. Sayre.

This is an action by appellant to recover of appellee damages for personal injuries sustained while in its employ alleging defects in the ways, works, machinery and plant of the defendant. The injuries happened to plaintiff in a wreck of a passenger train on which he was an employe at or near Claybank trestle, in Dale county.

The defenses set up, and the court's action on the pleas demurrers and replications are sufficiently stated in the opinion.

W. L. Martin, for appellant.—The relief or hospital scheme set up as a defense, is in contravention of the statute, Employer's Liability Act, and stipulates for immunity from liability for the wrongs of the defendant, and is against public policy, so that the contract will not be enforced.—*A. G. S. R. R. Co. v. Carroll,* 97 Ala. 126, 137; *Hissong v. R. & D. R. R. Co.,* 91 Ala. 514, 517; *L. & N. R. R. Co. v. Orr,* 91 Ala. 548, 554; *R. & D. R. R. Co. v. Jones,* 92 Ala. 218; Sedg. on Stat. & Const. Law, (2 ed.) pp. 337-8.

A contract which is void, either from a positive law, or upon principles of public policy, is deemed incapable of confirmation.—*Petit v. Petit,* 32 Ala. 288; *Clark v. Colbert,* 67 Ala. 92; *State v. Metcalf,* 75 Ala. 42; *Jem-*

*ison v. B. R. Co.,* 125 Ala. 378.

Finding the law of Alabama firmly settled against any antecedent contract or agreement tending to waive or impair the right of the employe to claim damages in any of the class of negligence specified in the statute, the defendant seeks to evade the Alabama law by means of the relief and hospital scheme as sustained by the law of Georgia. This scheme finds ample support in the decisions of that State.—*W. & A. R. R. v. Bishop,* 50 Ga. 465; *Galloway v. W. & A. R. R.,* 57 Ga. 512; *Cook v. W. & A. R. R.,* 72 Ga. 48; *F. B. C. Mills v. Wilson,* 89 Ga. 318. Mr. Thompson in his law of negligence, 1 Ed. § 28, in speaking of these decisions, says: "They do not do credit to the jurisprudence of the State." It is perfectly clear that this contract with its stipulations invoking the law of Georgia for the determination of all questions arising under it was but an attempt by device or substitute to evade the law of Alabama for the protection of employes. Such efforts to set up the law of a foreign State will not be sustained.—*P. S. Asso. v. Nonemacker,* 127 Ala. 521 and cases cited; *McGarry v. Nicklin,* 110 Ala. 559. The rule is well settled that the laws of a foreign State will not be enforced if such enforcement would contravene the settled policy of the forum, or be prejudicial to the interest of the citizens.—22 Am. & Eng. Ency. of Law, (2nd Ed) p. 1319; 1 Brickell's Dig. p. 350; *Cowan v. Roy,* 108 Fed. 320, s. c. 47 C. C. A. 352. In all the cases cited by appellee membership of the association was purely voluntary. The insurance contract is *ultra vires.* It is apparent that the defendant was and is without power under its corporate charter as a railroad to engage in a relief or hospital scheme and bind its assets to the performance of supposed contracts, and that no action would lie to recover any supposed benefit stipulated in said contract.—*Grand Lodge of Alabama v. Waddell,* 36 Ala. 313; *M. S. Bank v. Dunklin,* 54 Ala. 471; *Chambers v. Falkner,* 65 Ala. 448; *W. M. Co. v. Wilkinson,* 79 Ala. 312; *C. L. Works v. Dismukes,* 87 Ala. 344; *Long v. G. P. Ry. Co.,* 91 Ala. 519; *L. L. Co. v. Rees,* 103 Ala. 622; *First Nat. Bank v. Winchester,* 119 Ala. 168; *L. & N. R. R. Co. v. Mobile Co..*

124 Ala. 162; *S. Ry. Co. v. Mitchell*, 139 Ala. 629. The demurrer to plea 4 was undoubtedly good on the grounds that the plea does not show any consideration for a release.—*Coles v. Union Terminal Co.*, 99 N. W. 108. In any event, the fifth replication to this plea sets up that the release was obtained by fraud and misrepresentation. *W. Ry. of Alabama v. Arnett*, 137 Ala. 414; *Folmer v. Siler*, 132 Ala. 297; *Tillis v. Austin*, 117 Ala. 262; *Beck v. Houppert*, 104 Ala. 503. The release not being the foundation of the suit, it was subject to attack without sworn replication.—§§ 1800, 1801, Code 1896; *Arnett's case*, 137 Ala. 414. But the proposition that it is necessary to return the consideration paid for a release before the plaintiff may attack the release for fraud. as in this case is opposed to the great weight of authority.—*U. P. Ry. v. Harris*, 158 U. S. 326; *O'Brien v. Chicago Ry. Co.*, 89 Iowa 644; *Chicago R. R. Co. v. Lewis*, 109 Ill. 120; 18 Kan. 58; 72 Miss. 22; 160 Mass. 447; 50 N. Y. 670; 127 N. Y. 555 and many New York cases cited here; 69 N. E. 394; 1 Joyce on damages, §§ 199, 201. In his application for rehearing the appellant insisted that the result of the opinion in this case was to permit the law of a foreign State to be set up against and to defeat the assertions of a right guaranteed by the laws of Alabama to one of its own citizens, which is against the great weight of authority in Alabama.

J. M. CHILTON and A. A. WILEY, for appellee.—In the absence of the bill of exceptions, the action of the trial court on the motion to strike defendant's pleas cannot be considered.—*Weems v. Weems*, 69 Ala. 105; *Petty v. Dill*, 53 Ala. 641; *L. & S. et al. v. T. S. & A. Co.*, 99 Ala. 619; *Wiggins v. Witherington*, 96 Ala. 535. Although demurrers were interposed to pleas 2 and 4 as originally filed, yet demurrers were not refiled to the pleas as amended, nor were other demurrers filed thereto. Under these circumstances, demurrers cannot be reviewed. *Thorn v. Kemp*, 98 Ala. 423; *L. & N. R. R. Co. v. Woods*, 105 Ala. 561. The contract set up in the fourth and fifth pleas contains the provisions that it should be governed by the construction placed on it by the Georgia courts,

the opinion of the court of last resort of Georgia construing a contract identical in term with the one here set up is attached as an exhibit to the plea and made a part of it as the appropriate manner of proving the state of the law, under our decisions.—*Inye v. Murphy,* 10 Ala. 885; *Warner v. Young,* 56 Ala. 260; *Bush v. Garner,* 73 Ala. 162. The questions of the power of the associated companies under their charter to enter into a contract of this character, and the question of the validity of such contract, have been so fully considered by the highest courts of other states that a discussion of them as an original proposition would be useless. Besides the defense of *ultra vires* cannot be raised by demurrer. The burden is upon the party pleading it.—*Allen v. W. P. M. & M. Co.,* 31 So. 462; *Boulware v. Davis,* 90 Ala. 270. The validity of such agreements has been sustained by the courts of last resort of every State where the question has arisen.—*Johnston v. C. & S. R. R. Co.,* 36 S. E. 851; 71 Fed. Rep. 136; Ib. 931; 169 Ill. 312; 38 L. R. A. 750; 163 Pa. St. 127; 164 Ib. 529; 75 Md. 162; 152 Ind. 345; 93 Iowa 284; 70 N. W. 630. The replications to the pleas either merely joins issue, or denies the plea, or affirms the complaint. Demurrers were properly sustained to them.—*Wright v. Forgy,* 126 Ala. 389; *Watson v. Kirby,* 112 Ala. 436; *Bridges v. T. C. I. & R. R. Co.,* 109 Ala. 287. The replication setting up fraud or misrepresentation in the procurement of the release should have been sworn to.—*Bryan v. Wilson,* 27 Ala. 208; *Mauldin v. B. Bank of Mobile,* 2 Ala. 502; 85 Ala. 433; *Milligan v. Pollard,* 112 Ala. 465. While the replication avers that the plaintiff was deceived by Fitzsimmons at the time of the execution of the release, it does not deny that he afterwards knew its real import, and he nowhere offers to return the money paid him. The party complaining in a contract of this character must put his adversary *in statue quo.*—*Allgood v. Bank,* 115 Ala. 418; *Samples v. Guyer,* 120 Ala. 61; 82 Ala. 302; 94 Ala. 343; 113 Ala. 467. The allegations of fraud are not sufficient nor is it shown that such representation was not a mere matter of opinion; and for aught that appears the facts were equally open for the observation of both parties, and by

the exercise of ordinary prudence, the plaintiff might have obtained correct knowledge.—*Monroe v. Pritchett,* 16 Ala. 785; *Juzan v. Toulmin,* 9 Ala. 663. Misrepresentations must be as to material facts the truth of which could not be ascertained by the exercise of due diligence. *Coleman v. Bank,* 115 Ala. 307. Mere reliance on false representation is not sufficient; it must be justified.—*P. G. Co. v. Anglin,* 82 Ala. 494; 61 Ala. 387; 59 Ala. 535.

HARALSON, J.—This action is for the recovery of damages for personal injuries. No objection was raised to the sixth count in the complaint. The defendant filed six pleas. The first was the general issue, and the third was withdrawn, leaving special pleas, 2, 4, 5 and 6.

A motion was made to strike pleas 5 and 6, but the motion, pleas and the rulings thereon cannot be considered, as they are not set out in the bill of exceptions.—*Cottingham v. Greely Barnham Grocery Co.,* 129 Ala. 200, 30 South. 560, 87 Am. St. Rep. 58.

Demurrers were interposed to pleas 3 and 4 as originally filed. Each plea was afterwards amended, and it does not appear that the demurrers were afterwards interposed to the pleas as amended, and they cannot, therefore, be reviewed.—*L. & N. R. R. Co. v. Woods,* 105 Ala. 561, 17 South. 41. However, the grounds of objection to the original pleas were obviated by the amendments. This leaves for consideration the demurrers to the fifth and sixth pleas.

Adopting what is correctly said of these pleas by appellee's counsel in their brief, as to the substantial contents of those pleas, it may be said: "The fifth plea sets up the existence of an association composed of the defendant company and other railway companies, under the designation of the Relief & Hospital Department of the Plant System." The plea sets up the purpose of this organization, and the manner in which the contributions made by the companies themselves and their employes are to be conserved and dispensed Eeach employe contributes a stated sum per month. To this, the associated companies add $1,000.00 per month, which amounts to $12,000.00 per year, and in addition guarantees the pay-

ment of all the benefits that may accrue to employes under the terms of the contract. · In case of injury not causing death, employes are entitled to medical and surgical treatment at the hospital, provided for and maintained, furnished medicines, etc., while under such treatment, and are, besides, to be entitled to a certain weekly indemnity. In case of death, the benefit consists of a sum certain, to be paid to the family of deceased. The articles and purposes of the organization are fully set out in the plea. By the terms of the contract (of one becoming a member) the employe had the right, upon being injured, to determine whether he would accept the benefits arising from their joint contributions by the companies and the employes, or whether he would bring his suit to recover damages for any negligence, which he might claim, occasioned his injuries. In case of his death his representatives had the same right of choice.

The plea alleges that the plaintiff, Gladden Harrison, after he was injured, and before bringing suit, accepted the benefits to which he was entitled by the terms of this contract, and sets up the fact of such acceptance as a final and conclusive bar to his right afterwards to maintain a suit for damages for his alleged injuries.

The sixth plea, in somewhat different language, sets up the same contract, but adds that it was one of its terms, that its construction and effect should be determined by the laws of Georgia. It then proceeds to show that there was no statute law of Georgia applying to such contracts, but that a contract substantially the same in its provisions, and made with the same department, was construed, and its effect determined, by the Supreme Court of the State of Georgia, which was the highest court of the State, in the case of *Petty v. Brunswick, etc., R. R. Co.*, reported in 109 Ga. 666, 35 S. E. 82. The decision in that case is attached as an exhibit to the plea, and made a part of it.

The plea was demurred to on numerous grounds, the main contention raised by demurrer being that the contract between the plaintiff and the Relief & Hospital Department of the Plant System, and with the Alabama Midland Railway. Company, as a constituent member of

[Harrison v. Alabama Midland Ry. Co.]

that association, is invalid, on the grounds that the establishment of such a department is *ultra vires;* that there was no consideration for entering into the contract, and that the acceptance of the benefits of the same by the plaintiff did not constitute a binding election which prevented him from afterwards bringing and maintaining a suit to recover damages for his alleged injuries.

The contract of the plaintiff provides, that the associated companies shall contribute annually the sum of $12,000.00 as a benefit fund of the association, supplemented by monthly contributions from the employes. This wears the appearance of stability on which an employe may rely for the guaranteed relief, in case he should choose to become a member of the association. By the scheme of relief the employe, or his representative in case of accident or death, is offered the choice to be voluntarily exercised by him, of accepting indemnity provided for him by the company and other employes, or refusing such indemnity, bring suit to recover damages for his injuries.

We have been pointed to nothing in the charters of either of the companies which would prevent them from establishing such a relief hospital. The primary object of a railroad company is to build, equip and operate its line for the transportation of freight and passengers. In doing so, a vast number of employes are employed, all of whom, while in service on the line, are subject to dangers in multiplied forms, and to physical injuries, for which the companies are subjected to liabilities, and the injured often to irreparable loss. Any device or improvement which prevents, or is intended to prevent, these evils, is incident to the due exercise of their powers, and clearly within the scope of their organization. A ground on which this right is assailed is, that the scheme is an insurance business, but this is a mistake. It does not purport to be an insurance company. The benefits are in the way of relief in cases of sickness, accident or death, and is a beneficial and not an insurance association, as has been expressly held.—*Donald v. C. B. Ry.*

*Co.,* 93 Iowa 295, 61 N. W. 971, 33 L. R. A. 492; *Com. v. Equitable Association,* 137 Pa. 412, 18 Atl. 1112; *Assosiation v. Jones,* 154 Pa. 99, 26 Atl. 253.

The validity of the establishment of such relief associations by railroad companies, have been the subject of frequent adjudications in many of the states of the Union. The decision in the case referred to in the sixth plea (*Petty v. Brunswick, etc. Ry. Co.,* 109 Ga. 666, 35 S. E. 82), is a full, clear and able decision of all the main questions involved in this case, and which construes the validity of the same contract we have before us. The contract as the court says, "Did not, as claimed, in any of its terms or conditions stipulate that the defendant company should be absolved from the legal consequences of its own negligence, or that of its servants. On the contrary, it merely provided an additional remedy to that given by law to all employes who might suffer injury by reason of the negligence, actual or imputable, of his master. The latter remedy was left intact, undisturbed and unimpaired, and the injured employe might, or might not, at his option, take advantage thereof. True, he could not avail himself of both, but was put upon his voluntary election as to which of the two he would pursue. This feature of the contract is not only technically permissible, but is in perfect harmony and accord with that fundamental rule of law, based upon sound and sensible considerations of public policy, which contemplates that indemnity, rather than the mere chance of speculative gain, should be the primordial purpose of every contract designed to afford protection to a party thereto in the event he sustains loss or injury. Only in case the injured employe commits an error of judgment in determining whether he will accept benefits which, though comparatively small, are yet sure and easily within his grasp, or will hazard the less certain result of a suit for damages, can he possibly fail to realize all the fruits of every right given him by law. That it is conceivable that he may make such mistake, does not render the contract essentially or inherently vicious, and, therefore, opposed to public policy. A much more

[Harrison v. Alabama Midland Ry. Co.]

extended argument on the line just suggested might be presented, but we deem it wholly unnecessary. The question under discussion is not a novel one, but has been heretofore thoroughly sifted, minutely analyzed and satisfactorily determined by a number of the ablest courts in the country. For further light thereon, we refer those entertaining unsatisfied doubts to the following adjudications, wherein the whole subject, in all its various phases, has been fully and exhaustively dealt with.—*Eckman v. R. R. Co.,* 169 Ill. 312, 48 N. E. 496, 38 L. R. A. 750; *Johnson v. R. R. Co.,* 163 Pa. 127, 29 Atl. 854; *Ringle v. R. R. Co.,* 164 Pa. 529, 30 Atl. 492, 44 Am. St. Rep. 628; *Spitz v. R. R. Co.,* 75 Md. 162, 23 Atl. 307, 32 Am. St. Rep. 378; *Lease v. Pennsylvania Co.,* 10 Ind. App. 47, 37 N. E. 423; *Pittsburg R. R. Co. v. Moore,* 152 Ind. 345, 53 N. E. 290, 44 L. R. A. 638; *P. C. C. & St. L. Ry. Co. v. Cox,* 55 Ohio St. 497, 45 N. E. 641, 35 L. R. A. 507; *Donald v. R. R. Co.,* 93 Iowa 284, 61 N. W. 971, 33 L. R. A. 492; *Maine v. R. R. Co.,* (Iowa) 70 N. W. 630; *Chicago R. R. Co. v. Bell,* 44 Neb. 44, 62 N. W. 314; *Chicago R. R. Co. v. Curtis,* 51 Neb. 442, 71 N. W. 42, 66 Am. St. Rep. 456; *Johnson v. Ry. Co.,* 55 S. C. 152, 32 S. E. 2, 33 S. E. 174, 44 L. R. A. 645; *Owens v. R. R. Co.,* (C. C.) 35 Fed. 715, 1 L. R. A. 75; *State v. Railroad Co.,* (C. C.) 36 Fed. 655; *Otis v. Pennsylvania Co.,* (C. C.) 71 Fed. 136; *Shaver v. Pennsylvania,* (C. C.) 71 Fed. 931."

The demurrers to the pleas were properly overruled.

It is insisted, however, that the existence of the employer's liability act in this state, which does not exist in Georgia, makes this case a different one from that presented in the other states. We are unable to understand how the contract in question contravenes the employer's liability act, but on reasoning and principle it seems that that act can have no effect on the general principle.—*P. C. C. & St. L. Ry. Co. v. Cox,* 55 Ohio St. 497, 45 N. E. 641.

The other questions in the case arise mainly on sustaining demurrers to plaintiff's replications to defendant's pleas.

[Harrison v. Alabama Midland Ry. Co.]

The second plea, as amended, sets up, that after the accident complained of, and on the 1st of May, 1900, the defendant paid plaintiff $33.33 in compromise, set-tlement and release of the claim of the plaintiff sued on, and plaintiff then and there, in consideration of said sum, executed a release to defendant. The written release is made an exhibit to the plea, and recites, that in consideration of the payment of said sum of money, plaintiff comprised said claim and acquitted, discharged and released the defendant, its officers, agents and employes of and from any and all liability for said injury or any results, direct or indirect, arising therefrom, and acknowledged full accord and satisfaction therefor, etc.

The fourth plea, as amended, sets up, in substance, that after said accident, and before the commencement of this suit, the plaintiff agreed with defendant, that if defendant would employ plaintiff and pay him at the rate of $50.00 per month he would accept the same with the sum of $33.33 paid plaintiff by defendant, to wit: on the 1st day of May, 1900, in settlement of the claim sued upon, and avers, that it did so employ plaintiff and did pay him for his services at the rate of $50.00 per month, for and including the month of April, 1900, and including four days in March, 1901, when the plaintiff voluntarily left defendant's services and afterwards brought this suit, on the 16th day of March, 1901.

The plaintiff demurred to the pleas, which being overruled, he replied in substance that said release was secured by the fraud of defendant and its agents. The defendant demurred to the replications on many grounds, among them being the one, that "it is not denied in said replication but that plaintiff knew, some time after he signed said release, what its provisions were, and there is no averment that he ever returned or offered to return the said sum alleged to have been paid him." "It is alleged in said plea and not denied in said replication that plaintiff was paid by defendant said sum of $33.33, and it is not alleged in said replication that plaintiff has ever returned or offered to return said money," nor did he offer to rescind said contract, though he knew what the provisions of said release were.

The demurrers to the replication were sustained.

[Central of Ga. Ry. Co. v. Alexander as Admr.]

In *Stephenson v. Allison*, 123 Ala. 439, 26 South. 292, it is said, quoting from another case: "If the party defrauded would disaffirm the contract, he must do so at the earliest practical moment after discovery of the cheat. This is the time to make his election and it must be done promptly and unreservedly. He must not hesitate; nor can he be allowed to deal with the subject matter of the contract and afterwards rescind. The election is with him—he may affirm or disaffirm the contract but he cannot do both; and if he concludes to abide by it, as upon the whole advantageous, he shall not afterwards be permitted to question its validity. The party who would disaffirm a fraudulent contract must return whatever he has received from it. This is on a plain and just principle. He cannot hold on to such part of the contract as may be desirable on his part and avoid the residue; but must rescind in toto, if at all."—*Masson v. Bovct*, 1 Denio (N. Y.) 69, 43 Am. Dec. 651; *Dill v. Camp*, 22 Ala. 249; *Burnett v. Stanton*, 2 Ala. 181.

We find no error in the ruling sustaining the demurrers to the replications.

Affirmed.

DOWDELL, SIMPSON and DENSON, JJ., concurring.

*Action for Damages for Death of Employe.*