# Dacovich *et al. v.* Canizas.

*Bill to Enjoin the Voting of Corporate Stock, and to Require its Return to the Corporation Treasury.*

(Decided July 2, 1907.  44 South. 473.)

1. *Corporations; Purchase of its Own Stock; Validity.*—Where the board of directors of a corporation purchased stock of the corporation with corporate funds for the benefit of the corporation, the stock belongs to the corporation, unless the corporation repudiates the transaction, and such cannot be re-issued unless authorized by the corporation.

2. *Same; Agreement by Directors; Validity.*—The agreement among directors to purchase stock of the corporation with corporate funds being in violation of their fiduciary relation to the corporation, such agreement does not prevent one of the directors from purchasing corporate stock for his own use and to refuse to put the same into the scheme for purchasing stock for corporate use.

[Dacovich, et al. v. Canizas.]

3. *Injunction; Parties.*—In a suit to enjoin persons from exercising any right under an unauthorized transfer of corporate stock to them, and to require a return of the stock to the corporation treasury, the corporation is a proper party.

APPEAL from Mobile Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Suit by Manuel Canizas and others against Andrew Dacovich and others to enjoin respondents from voting or otherwise exercising any rights under a transfer of corporate stock to them which had been purchased for the corporation, and to require a return of said stock to the corporation treasury. There was a decree for complainants' and respondents' appeal. Affirmed.

L. H. & E. W. FAITH, for appellants. A contract which contemplates the violation of a statute or constitution as a mode of executing such contract is illegal and void.—*Williams v. Evans,* 87 Ala. 725; *Elyton L. Co. v. Bir. L. Co.,* 92 Ala. 416. This corporation was organized under the provisions of the Code of 1896, as amended by the acts 1903, p. 157, and all its powers are derived therefrom. It follows that the board of directors were without authority to purchase the stock of the corporation with the funds of the corporation.—*Wilkes v. G. P. Ry. Co.,* 79 Ala. 180; 7 A. & E. Ency. of Law, pp. 818-819. The manner in which the corporation may buy its own stock is prescribed by said act and it must be done in the manner prescribed by the statute.—*Bickley v. Keenan,* 60 Ala. 295; *Arrington v. S. & W. R. R. Co.,* 95 Ala. 434. —*Hall & Farley v. Henderson,* 126 Ala. 481; *Glenn v. Hatchett,* 91 Ala. 318. The bill shows bad faith on the part of the complainant, and hence, they have no standing in equity.—*Treadwell v. Torbett,* 119 Ala. 279; *Larkin v. Mason,* 71 Ala. 231; *Clarke v. Colbert,* 67 Ala. 92.

[Dacovich, et al. v. Canizas.]

STEVENS & LYONS, for appellee. The corporation had the right to purchase its own stock.—7 A. & E. Ency. of Law, 821; *Walden Nat. Bank v. Birch*, 130 N. Y. 221; *Bank v. Matthews*, 98 U. S. 621; *Bank v. Whitney*, 102 U. S. 99; 112 U. S. 439; 140 U. S. 240; 29 Fed. 734. The directors and officers of the corporation occupy such a trust position to the corporation as to make them subject to all of the rules governing trustees.—*DeBardelaben vs. B. L. & I. Co.*, 140 Ala. 621; *Lagarde v. Anniston L. & S. Co.*, 126 Ala. 496; *M. & C. Railroad oC. v. Woods*, 88 Ala. 642; *O'Connor M. & M. Co. v. Furnace Co.*, 95 Ala. 617; *Tuscaloosa M. Co. et al v. Cox, et al*, 68 Ala. 71. "Where a trustee in violation of his trust invests the trust property, or its proceeds, in any other property, the cestui qui trust may elect to hold the substituted property subject to the trust, or to hold the trustee personally liable to him for a breach of the trust."—*Ellison v. Moses*, 95 Ala. 228; *Goldsmith v. Stetson & Co.*, 30 Ala. 164; *Smith v. Perry*, 56 Ala. 268; *Martin v. Raborn*, 42 Ala. 648; 17 Enc. of Law, 475; 28 Enc. of Law, 1110. This proposition is recognized all through the Alabama cases, and is forcibly discussed in.—*Oliver v. Piatt*, 3 Howard, 333 (11 L. ed. 653).

Equity will settle conflicting claims to stock and restrain by injunction the exercise by the holders of illegal stock of the privilege of voting, or any other privileges incident to stock ownership.—*Howard v. Corey*, 126 Ala. 283; *Cook on Corporations*, Sections 614 and 70; *Hill v. Parish*, 14 N. J. Eq. 380; *Parsons v. Joseph*, 92 Ala. 403; *Luther et al v. C. J. Luther Co., et al.* 94 N. W. (Wis.) 69.

The corporation was a proper party.—*Broughton v. Mitchell*, 64 Ala. 210; *Perkins v. Brierfield Co.*, 77 Ala. 403; *Jones v. Caldwell*, 116 Ala. 364; *McKay v. Broad*, 70 Ala. 378; *Wilkinson v. May*, 69 Ala. 33; 3 Mayfield's Digest, pages 254 and 259.

19 R

SIMPSON, J.—The bill in this case was filed by the appellees against the appellants, alleging that the complainant American Ice & Fuel Company was a corporation under the laws of Alabama; that after the corporation had been in operation about one year, and was prospering, the directors agreed among themselves that they would purchase for the corporation all of the capital stock which could be purchased on advantageous terms with the funds of the company; and that they did so purchase various shares of stock (set out in the bill) amounting in all to 158 shares, leaving outstanding 292 shares—and showing that the corporation is solvent, and that the shares of stock were worth largely more than the amounts for which they were purchased. The bill further averred that shortly before the 10th day of January, 1907, the day fixed for the annual meeting of the stockholders, Chiepolich (one of the directors and general manager) sold his stock to Canizas, another director, and that Andrew Dacovich (another director and secretary and treasurer) took from the treasury certificates evidencing 106 shares of the capital stock, which had been purchased, and altered or filled in the indorsements thereon, so as to transfer them to his son, J. P. Dacovich, and likewise took, altered, and transferred 9 additional shares to his other son, George H. Dacovich, making it appear that they were transferred on January 7, 1907; that the stubs from which said shares were taken had originally shown that they had been transferred to said company, but that said Dacovich had placed on each additional indorsements purporting to show that the transfer to said company was illegal, and that the shares had been transferred to his said two sons; that J. P. Dacovich attempted to transfer one of his shares to E. W. Faith, and that said Andrew Dacovich also changed the stock ledger so as to show said transfers; that this

stock was sold for greatly less than its value, and that the complaining stockholders knew nothing of it till the annual meeting on January 10, 1907, when they protested against it; that all of this stock, added to what A. Dacovich and the Walshes had, would give them a majority of the stock, and would all have been voted at said meeting, but for the fact that the share transferred to Faith had not been transferred two days, in accordance with the by-laws; and that said A. Dacovich reported at said meeting that there remained still 43 shares of said purchased stock in the treasury, which he proposed to sell. The bill alleges that the complainants were and are satisfied with the purchase of said stock by the company, but that A. Dacovich had no authority to take the same from the treaury and transfer it as above described; that the consideration for said transfer was not more than half the value of said stock, and that the same was a fraud upon the company and the complaining stockholders; that said stockholders' meeting was adjourned, to meet on February 5, 1907, at which time all of said stock would be voted, making a majority of the stock, although the complaining stockholders own a majority of the stock that could be legally voted, leaving out said illegally transferred stock. The bill charges the defendants with entering into a conspiracy to thus illegally issue said stock, and get control of a majority of the stock, and defraud the other stockholders. The complainant American Ice & Fuel Company disclaims any right to the money received for the sale of its said stock without authority. The prayers of the bill are that said parties be enjoined from voting or exercising any other rights by virtue of said transfers of said stock; that said stock be required to be returned to the treasury and the money attempted to be paid therefor withdrawn from the treasury of the company; and for general relief. The answer

admits the material allegations of the bill, to wit, the agreement between the directors, the purchase of the stock with the funds of the company, and the subsequent transfers, but denies that the stock was as valuable as stated in the bill, and states that some of the certificates so purchased were not indorsed to the corporation, but were merely indorsed in blank, and afterwards simply filled in when transferred to the sons of Dacovich. It also states that there was a secret agreement among the directors that the other stockholders were not to be informed of the fact that they were buying up the stock until they had purchased all of the remaining stock; that Canizas (who was one of the directors) bought the stock of Chiepolich and Russell, who were original stockholders, and did not propose to put the same into the general treasury, and they feared he was thus going to get control of the stockholders' meeting, and vote himself a salary, etc. The appeal is from the decree of the chancellor, overruling the motion to dismiss the bill and the motion to dissolve the preliminary injunction, and granting the motion to dissolve the injunction awarded on the cross-bill, restraining complainants from holding any stockholders' meeting until the rights of the cross-complainants in the said 115 shares of stock are finally determined.

It will be seen that there are no facts set up in the answer which change the equity of the bill. As to the original purchase of the stock by the directors with the funds of the company, whether the certificates were indorsed in blank, or indorsed to the company, under the facts stated, it was a purchase by the officers of the company, for the company. The court has said, under such a purchase, "though perhaps binding inter partes, which, however, we do not here decide, it is very certain that it was voidable at the instance of creditors of the corpora-

tion."—*Hall & Farley, Trustees, etc., v. Henderson,* 126 Ala. 481. It is stated to be the general doctrine that a corporation may, in the absence of statutory prohibition, purchase and hold its own capital stock, provided it be done in good faith and works no injury to creditors or other stockholders.—7 Am. & Eng. Ency. Law, pp. 818-820. Again, it is stated that, while there is a difference of opinion in this country as to the right of a corporation to purchase its own stock, "if the stockholders do not object there is no reason why the net profits of a corporation should not be applied to purchasing its stock, instead of being used for a dividend," and that even in England, where the power is denied, "if the sale is completed, the stock belongs to the corporation."—1 Cook on Corporations (th Ed.) Sections 309, 311. The United States statutes prohibit national banks from taking their own stock, or real estate, as collateral security for loans; yet it is held that, when it is done, it is a valid transaction between the parties, and only the government can take advantage of the breach of law.—*Waldon Nat. Bank v. Birch,* 29 N. E. 127, 130 N. Y. 221, 14 L. R. A. 211; *Thompson v. St. N. Nat. Bank,* 146 U. S. 240, 13 Sup. Ct. 66, 36 L. Ed. 956; *Nat. Bank v. Matthews,* 98 U. S. 621, 25 L. Ed. 188. It was also held that, where a state bank had power to accept stock in a national bank as security for a loan, but no power to purchase such stock, yet did purchase said stock, it becomes liable to an assessment thereon.—*Citizen's Bank of Noblesville v. Hawkins,* 71 Fed. 369, 18 C. C. A. 78. It is also the law that where an officer, or any other person occupying a fiduciary relation, invests the funds of his principal in other property, the principal has the option either to hold the substitutetd property, or to hold the trustee personally liable.—*Oliver et al v. Piatt,* 3 How. ( U. S.) 333, 11 L. Ed. 622 (11 L. C. P. Co. 332) ; *Martin v. Raborn.*

[Dacovich, et al. v. Canizas.]

*A dm'x, et al.*, 42 Ala. 648; *Smith et al v. Perry*, 56 Ala. 266; *Ellison v. Moses*, 95 Ala. 228, 11 South. 347.

Under these principles the shares of stock, when purchased, became the property of the corporation, and unless the corporation repudiated the transaction, or by some corporate act authorized the sale and reissue of the stock, it was not within the powers of the officers to sell and issue the same. The objections to the purchase of its stock by a corporation are for the purpose of protecting creditors and the prevention of fraud, and, whatever might be the theory in other aspects of the case, it is clear that this principle would not be made the instrument of fraud by the officers who occupy a fiduciary relation to the corporation and its shareholders.—*M. & C. R. R. Co. v. Woods*, 88 Ala. 630, 642, 7 South. 108; *O'Conner Mining & Mfg. Co. v. Coosa Furnace Co.*, 95 Ala. 614, 617, 10 South. 290, 36 Am. St. Rep. 251; *Lagarde et al. vft. Anniston Lime & Stone Co.*, 126 Ala. 496, 500, 28 South. 199; *De Bardeleben v. Bessemer Land & Imp. Co.*, 140 Ala. 621, 632, 37 South. 511; *Luther et al. v. C. J. Luther Co. et al.*, 94 N. W. 69, 72, 118 Wis. 112, 29 Am. St. Rep. 977; *Sampson v. Fox*, 109 Ala. 662, 671, 19 South. 896, 55 Am. St. Rep. 950. The fact that Canizas refused to carry out the scheme agreed on by the directors can have no bearing on the case, as the agreement of itself was a violation of their fiduciary relations and as to his purchase individually of the stock of Chiepolich and Russell, he had a right to purchase it, and was not under any legal obligation to bring it into the scheme.

The corporation was a proper party to the bill.

The decree of the court is affirmed.

Affirmed.

Tyson, C. J., and Haralson and Denson, JJ.. concur.