(135 So. 448)

## AMERICANIZED FINANCE CORPORA-
## TION v. YARBROUGH.

### 6 Div. 753.

Supreme Court of Alabama.
June 18, 1931.

Hugh A. Locke and F. V. Wells, both of Birmingham, for appellant.

Arlie Barber and Amzi G. Barber, both of Birmingham, for appellee.

THOMAS, J.

The suit was for money had by the defendant for the use of the plaintiff. The pleas were the general issue and in short by consent.

The several assignments of error challenge the action of the court in ruling on the admission of evidence and giving and refusing requested charges.

The court instructed the jury, among other things, that, "in substance and effect, the plaintiff alleges in count one of the complaint that the defendant, by its agents, fraudulently represented to plaintiff that, if he would purchase the stock in question, the defendant would return the purchase money to the plaintiff upon the plaintiff returning or surrendering the stock to the defendant within a reasonable time thereafter; and that such representation was made by the defendant with no intention of complying with same, knowing at the time it would not be complied with, or recklessly, with the intention of deceiving and inducing plaintiff to purchase the stock; and the plaintiff relied on said representation and was thereby induced to purchase said stock; that, thereafter, in a reasonable time, when plaintiff offered to return the stock and requested that the purchase money be returned to him, he discovered the fraud, and, thereupon, promptly rescinded said sale. * * * Some of the material questions for you to determine in this case are, among other things, what representation was actually made to the plaintiff. Did the defendant's agent represent to the plain-

tiff, as alleged, that the defendant would return the purchase money upon the plaintiff's returning and surrendering the stock to the defendant? If he did, within a reasonable time, did the agent of the defendant make that representation with no intention of complying with same, or knowing it would not be complied with, or recklessly, with the intention of deceiving and inducing the plaintiff to purchase the stock? If he did, then the further question, did the plaintiff rely on that representation? Was that a material inducement to him in purchasing the stock? And the further question, if there was fraud, and if the plaintiff discovered it, as stated, did he then rescind, if there was a fraudulent representation, as alleged, relied on by plaintiff? In order to recover in an action of this kind—this is not an action for breach of contract. This is an action for the recovery of money had by the defendant for the use of plaintiff; that is, fraud and rescission upon the discovery of the fraud. And, in order to recover, the law says that a person, upon discovering the fraud, must rescind; that is, he must offer to return what he had gotten in the sale. So, you will have for your consideration, among other things, whether or not there was a rescission or an offer to restore what he got under it to the defendant and offered to return the stock; or, if there was not, whether or not you are reasonably satisfied from the evidence that the defendant did not receive the return of the stock had it been so tendered."

Such were the issues of material fact submitted and determined by the jury and verdict for the plaintiff, for the amount sued for with interest thereon.

■ The witness Yarbrough, having detailed the facts or words of inducement incident to the purchase of the instant stock in the corporation, was asked: "Just tell the jury what other or further statements were made to you by these men with reference to refunding the money or taking back the stock."

To which he answered: "They said: 'That is all right. You can get it back.' They said: 'You can carry that to the bank and they will pay you the money on it, just throw it down in the bank and they will pay you the money on it, or carry it to the company.' * * * They just told me Mr. Yeilding sent them up there; that is, W. J. The president of the corporation sent them there to get me to take that stock. This Mr. Yeilding here (indicating) told me that. He told me he was a nephew of his. Every time they came, they told me about getting my money back on the stock. I said: 'I am liable to need my money.' They said: 'You can get it any time; that is our plan; we pay it back.' 'Most of these companies,' I said, 'if I go to them, I am liable to have a suit against them.' 'No; we don't do that.' That is

what I said. I said: 'I am liable to have to sue you.' 'No; we pay it back. When a man wants it, we give it to him; don't have to sue this company.' I got a hundred dollars and something back. Sixteen hundred is what it calls for."

In the admission of this evidence over the objection of defendant, there was no error; the question and answer were material to the issues of fact submitted to the jury. Appellant's brief says that "both plaintiff and defendant rely upon the evidence offered by plaintiff in support of their respective contentions."

■ The witness Yarbrough further stated that he made demand on rescission to Mr. Yeilding, the president of said company; was asked what Mr. Yeilding said to him, and was permitted to answer, over defendant's objection and exception: "I just went in and asked Mr. Yeilding about it. I told him I was needing the money, I had bought a farm and I wanted the money. He said: 'You can't get that money at all.' I said: 'What did you say,—can't get that money at all?' I said: 'Your agents told me I could get it any time, that was your plan, that when anybody called for the money, they could come in and get it.' * * * He said: 'If you had come to me, I could have told you better.'"

These statements were material and competent as to rescission and failure and refusal to return the purchase price under the alleged contract of purchase. And in this ruling there was no error.

The insistence of error in refusing the general affirmative instructions requested by defendant is without merit. The authorities need not be recited as to when such instructions may be given or refused. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135.

■■ The real question is presented by the refusal of defendant's requested written charge H and affirmative instructions refused. As to the refusal of charge H, it may be said that the office of certificates of stock in corporations is discussed in Randle v. Winona Coal Company, 206 Ala. 254, 89 So. 790, 19 A. L. R. 118, and Hall & Farley v. Alabama Terminal & Improvement Co., 173 Ala. 398, 56 So. 235. Under the last-cited decision there was no error in refusing charge H. It is only when a corporation purchases shares of its own capital stock *in an attempt to discharge the liability of its original stockholders on unpaid subscriptions*, by the use of assets of the corporation, that fraud upon its creditors is presumed; and in this respect it was declared that if it operates as a fraud on its creditors, that will be taken into account on due application of such creditors. The initial case of Hall & Farley, Trustees v. Henderson, 126 Ala. 449, 28 So. 531, 61

L. R. A. 621, 85 Am. St. Rep. 53, recognized the right of a corporation to buy in its capital stock, if such transaction of the corporation does not impair its ability to pay its debts, and held if it was not a fraud on its creditors, and did not involve the elements of an estoppel as affecting others subscribing for stock on the faith of such subscription in question, such purchases may be made.

In Hall & Farley, Trustees v. Alabama Terminal & Improvement Co., 143 Ala. 464, 481, 39 So. 285, 291, 2 L. R. A. (N. S.) 130, 5 Ann. Cas. 363, the court said of the purchase of its stock by a corporation: "Such a diversion of corporate property is, in respect of creditors, essentially a gift to the shareholders whose shares are purchased by the company, a purely voluntary transfer of corporate assets in fraud of corporate creditors, fraudulent and void as to creditors, and this, regardless of the intention actuating the company and the selling shareholders. 2 Morawetz on Corporations, §§ 789, 790, 793, 794; 2 Thompson on Corporations, § 2054 et seq.; Hall & Farley, Trustees v. Henderson, 126 Ala. 449, 480–482, 28 So. 531, 61 L. R. A. 621, 85 Am. St. Rep. 53, and authorities there cited."

And in Dacovich et al. v. Canizas, 152 Ala. 287, 293, 294, 44 So. 473, 474, it is observed:

" * * * Under the facts stated, it was a purchase by the officers of the company, for the company. The court has said, under such a purchase, 'though perhaps binding inter partes, which, however, we do not here decide, it is very certain that it was voidable at the instance of creditors of the corporation.' Hall & Farley, Trustees, etc., v. Henderson, 126 Ala. 481, 28 So. 531, 61 L. R. A. 621, 85 Am. St. Rep. 53. It is stated to be the general doctrine that a corporation may, in the absence of statutory prohibition, purchase and hold its own capital stock, provided it be done in good faith and works no injury to creditors or other stockholders. 7 Am. & Eng. Ency. Law, pp. 818–820. Again, it is stated that, while there is a difference of opinion in this country as to the right of a corporation to purchase its own stock, 'if the stockholders do not object there is no reason why the net profits of a corporation should not be applied to purchasing its stock, instead of being used for a dividend,' and that even in England, where the power is denied, 'if the sale is completed, the stock belongs to the corporation.' 1 Cook on Corporations (5th Ed.) §§ 309, 311. * * *

"Under these principles the shares of stock, when purchased, became the property of the corporation, and unless the corporation repudiated the transaction, or by some corporate act authorized the sale and reissue of the stock, it was not within the powers of the officers to sell and issue the same. The objections to the purchase of its stock by a corpora-

tion are for the purpose of protecting creditors and the prevention of fraud, and, whatever might be the theory in other aspects of the case, it is clear that this principle would not be made the instrument of fraud by the officers who occupy a fiduciary relation to the corporation and its shareholders."

See, also, 14 C. J. 570, 571; 14 A. C. J. 275, 282; 61 L. R. A. 621; L. R. A. 1916B, 711, note 4.

In Draper v. Blackwell & Keith, 138 Ala. 182, 184, 35 So. 110, this court said: "In the absence of statutory restriction, a solvent banking corporation, not contemplating insolvency or dissolution, may purchase its own stock in payment of a previously existing debt due from its stockholder. Morse on Banking, § 716; Zane on Banking, §·119; Boone on Banking, § 218. Such a purchase does not necessarily operate to withdraw the purchased shares from the capital stock of the corporation, or as a fraud on creditors. The shares, when so taken and transferred, become the property of the bank, and may be resold or held for the benefit of creditors and the remaining stockholders, together with any dividends that may be earned on it. Boone on Banking, § 218; Taylor v. Miami Ex. Co., 6 Ohio, 176."

So, also, is this statement in Glenn v. Hatchett, 91 Ala. 316, 318, 8 So. 656; Henderson v. Garner, 200 Ala. 59, 75 So. 387.

The foregoing authorities are sufficient under the evidence to indicate that there was no reversible error in refusing defendant's written charge H.

In the decision of Mutual Loan Soc. v. Letson, 202 Ala. 683, 81 So. 659; Id., 200 Ala. 251, 76 So. 17, the court said: "There is no evidence that either of the persons serving this corporation and making these assertions had the authority or power to annul plaintiff's status as a stockholder, a power to convert plaintiff from a stockholder to a creditor. Being a stockholder, holding the certificate and retaining the dividends paid to him, he cannot recover, under the common counts, the money he paid for the stock. There is no evidence of any fraud practiced upon plaintiff in respect of his subscription for, or his purchase of, the stock. In any event, no rescission could be effected while the plaintiff held the certificate and the money he received as dividends."

■ Letson v. Mutual Loan Soc., 208 Ala. 285, 94 So. 288, authorized the giving of defendant's charge D, requested in writing. There is no evidence or tendency thereof of the return, or of a timely and effective offer of such return of dividends paid by defendant, received and retained by plaintiff. It is settled that an offer of rescission, to be effective should show that promptly after discovery of a fraud, there must be a return of the

consideration received, and this is precedent to the right to maintain an action based upon rescission of contract. Barbour v. Poncelor, 203 Ala. 386, 393, 83 So. 130; Stone v. Walker, 201 Ala. 130, 77 So. 554, L. R. A. 1918C, 839; B. R. L. & P. Co. v. Jordan, 170 Ala. 530, 54 So. 280; Berman Bros. I. & S. Co. v. State Savings & Loan Co., 222 Ala. 9, 130 So. 555.

In B. R. L. & P. Co. v. Jordan, 170 Ala. 530, 537, 54'So. 280, 282, Mr. Chief Justice Anderson says: "The person who would disaffirm a fraudulent contract must return whatever he has received under it. This is on a plain and just principle. He cannot hold on to such part of the contract as may be desirable on his part and avoid the residue, but must rescind in toto, if at all. Stephenson v. Allison, 123 Ala. 439, 26 So. 290. This rule prevails in courts of law as well as equity, and applies to releases like the one in question. Harrison v. Ala. Midland R. R. Co., 144 Ala. 256, 40 So. 394 [6 Ann. Cas. 804]; Kelly v. L. & N. R. R. Co., 154 Ala. 576, 45 So. 906; Birmingham`R. R. Co. v. Hinton, 158 Ala. 470, 48 So. 546."

A like statement as to restoring the status quo is contained in Stone v. Walker, 201 Ala. 130, 133, 77 So. 554, 557, L. R. A. 1918C, 839, saying: "As a condition precedent to the exercise of the right of rescission, the party complaining must, if practicable, restore, or offer to restore, to the other party what he had received from him by virtue of the contract. Cozzins v. Whitaker, 3 Stew. & P. 322; Jemison v. Woodruff, 34 Ala. 143; Young v. Arntze, 86 Ala. 116, 5 So. 253; Rice v. Gilbreath, 119 Ala. 424, 24 So. 421. This obviously has no application, however, where it has become impossible for such party to make such restoration by reason of the conduct or default of such other party. Johnson v. Oehmig, 95 Ala. 189, 10 So. 430, 36 Am. St. Rep. 204."

The plaintiff became a stockholder in the defendant corporation in November, 1927; in September, 1929, after having been a stockholder for twenty-two months, and after receiving his dividend of 8 per cent., he brings this suit without apprising the defendant by his original pleadings what he is insisting upon, to compel the defendant to buy back his stock. Now, the question raised is: When did the plaintiff discover, or should have discovered, that he could not expect the corporation to repurchase or redeem his stock? In determining whether or not he has been diligent and acted promptly, as required by the decisions, it will be noted as to the fact, or information, that it is brought to him by actual or imputed knowledge.

■ It is a well-established rule of law that a member or stockholder of a corporation is presumed to know the provisions of its charter or by-laws, and the requirements and the prohibitions of the statute under which it is

organized. "Corporation," 14 C. J. p. 845, § 1285. Plaintiff was delivered his certificate of stock promptly on consummation of the sale. These certificates are in the record, and contain no provision for repurchase. Appellee therefore had notice that the company was entering into no such contract, which was shown on the face of said certificates. In January, after he purchased, he received an 8 per cent. dividend on this stock, which he accepted, and suit was brought nine months after he received this 8 per cent. dividend. It is not shown that appellee did not receive the certificates of stock and understand them. He gives no testimony that justifies or excuses his failure to read, or inability to understand, the certificates. The stock certificate is very plain, clear, and unambiguous. Appellee testifies that some time prior to the suit, he demanded that the company buy back his stock. While there is testimony to the effect that he did offer back the certificates of stock, there is no testimony tending to show that he ever offered back the dividend, which he received.

■ In Dean v. Brown, 201 Ala. 465, 78 So. 966, and McCoy v. Prince, 11 Ala. App. 388, 66 So. 950, the courts have held that a purchaser of stock, seeking to rescind the sale of same on the ground of fraud, must act promptly after actual or imputed knowledge of the fraud, and if he fails to restore or offer to restore what he has received within a reasonable time after such knowledge, he thereby elects to ratify the contract.

■■ The demand made by plaintiff's attorney did not amount to a tender and offer to rescind. The evidence showed that he carried the stock, which had not been transferred to the defendant, to the office of the defendant, and in a few words demanded that the manager, who had no authority to act at the time, hand him over the face value of the stock. In this purported tender, he only offered back the stock and not the dividend, and as held in Mutual Loan Soc. v. Letson, 202 Ala. 683, 81 So. 659, there could have been no rescission until he offered back the stock and the dividend, as was said in that case, "in any event, no rescission could be effected while the plaintiff held the certificate and the money he received as dividends." The evidence of demand was as follows: "September 4. 1929, I went into the office of the Americanized Finance Corporation, on Twenty-First Street, between Fifth and Sixth Avenue, North, at 8:45 a. m., today, and introduced myself to Mr. Leigh. I told him Mr. Yarbrough was a stockholder in his corporation, and, by virtue of the promises made to him when he bought the stock, he wanted his money back, and handed him the stock. He took it and spread it out on the table, and said: 'What is the matter with Mr. Yarbrough?' I said: 'Nothing, except that he wants to buy a farm and needs the money, and your agents told him that any time he wanted to turn the stock in and get his money, he could do so.' He said: 'Who told him that?' I answered: 'Professor Lovejoy and young Mr. Yeilding.' He said: 'W. L. Yeilding?' I answered: 'I do not know his initials, but it was the young man.' I also added: 'Mr. Yarbrough went to W. J. Yeilding, the President, and Judge Locke, asking them for refund. Mr. Yeilding referred him to Judge Locke.' Mr. Leigh then said: 'I was not with the company when this stock was sold and I know nothing about what promises were made and am not an officer in the company; but our articles and by-laws make no provision for re-purchase of our stock, and, therefore, I cannot take it up or redeem it.' I then said: 'I will file a suit on it at once.' "

It is clear that the offer to rescind was inadequate and insufficient, when appellee-plaintiff retained the dividend, even though he had made a due offer of the stock. His ratifying of the contract in retaining the dividend destroyed any right he may have had. A contract cannot be rescinded in part.

■ The failure on the part of the plaintiff to return, or offer to return, and keep good the offer, the stock and dividends received from the defendant, precludes recovery on the theory of rescission. Mutual Loan Soc. v. Letson, 202 Ala. 683, 81 So. 659; Marten v. Paul O. Burns Wine Co., 99 Cal. 355, 33 P. 1107; Bissell v. Heath, 98 Mich. 472, 57 N. W. 585; Hanly v. Cosmopolitan Nat'l Bank, 20 Pa. Dist. R. 401; Fairbanks Morse & Co. v. Dees, 220 Ala. 41, 126 So. 624; Pleak v. Marks, 171 Iowa, 551, 152 N. W. 63; Alfree Manufacturing Co. v. Grace, 59 Neb. 777, 82 N. W. 11.

The plaintiff testified in the matter of dividends that: "After that, one time, I received dividends on this stock. I do not remember exactly how much it was—hundred and twenty something dollars. One Hundred Twenty-Two Dollars and Seven cents is about right. It was right along there. I had not called for my money then. I didn't need it, you know. I had not needed it. That (indicating) is the check I received, and this is my signature on the back of it. This check is signed by the Americanized Finance Corporation by Frank M. Leigh, Manager; countersigned, Hugh A. Locke. That came through the mail. * * * I didn't want to borrow any money. Oh, that was this last August. Oh, yes; that was four or five months after I had received the dividend. I have not been up to the company's place of business since this suit was filed. * * * These stock certificates over here (indicating) are still shown on the books of the company as owned by and belonging to Mr. Yarbrough, the plaintiff. That (indicating) is the check that was given to him (W. B. Yarbrough) for dividends."

■ There was error in refusing defendant's charge D, and other affirmative instructions requested in writing by the defendant should have been given.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.