318 So.2d 245

**VILLAGE INN PANCAKE HOUSE OF MO-BILE, INC., an Alabama Corporation**

v.

**Charles H. HIGDON.**

**SC 1237.**

Supreme Court of Alabama.

July 31, 1975.

Donald F. Pierce and William C. Roedder, Jr., Mobile, for appellant.

Charles H. Erwin, Mobile, for appellee.

EMBRY, Justice.

Appeal by plaintiff below from judgment of the Circuit Court of Mobile County rendered after trial without jury on evidence adduced ore tenus. The provisions of the judgment complained of in this appeal denied rescission of that part of a stock redemption agreement containing a noncompetition covenant and denied money judgment for plaintiff against defendant in the sum of $10,000 plus interest. We affirm.

Defendant Charles Higdon and wife owned fifty percent of the stock (30

shares) of Village Inn Pancake House of Mobile, an Alabama Corporation. Mr. and Mrs. Higdon managed the restaurant of that corporation known as Village Inn Pancake House. On 29 August 1971 they entered into an agreement under which the corporation purchased for redemption the stock owned by the Higdons for the sum of $57,500 payable in five installments. Paragraph 6 of the agreement states:

"6. Charles H. Higdon, one of the Stockholders, personally covenants and agrees that he will not directly or indirectly for a period of three years from September 10, 1971, within the area commonly known as Metropolitan Mobile, Alabama, engage in the operation, management, supervision or employment with, a popular priced family-style non-liquor serving restaurant and/or coffee shop facility. In consideration therefor, Mobile promises to pay Charles H. Higdon $10,000 in cash or certified funds on or before September 10, 1971, or upon such later date as Charles H. Higdon may specify in writing to Mobile."

The complaint of Village Inn sought:

1. To permanently enjoin Higdon from violating the noncompetition covenant contained in paragraph 6 of the agreement.

2. To direct specific performance of the terms of paragraph 6.

3. To enter judgment against Higdon in the sum of $10,000, plus interest and costs, from the date on which the noncompetition covenant was found to be first violated.

4. For such further or other relief to which Village Inn might be entitled or for which it moved during the pendency of the litigation.

Higdon's answer denied breach of the noncompetition provision of the Redemption Agreement. Issue was joined and trial proceeded on these questions: (A) Was the noncompetition provision violated? (B) Did Village Inn suffer loss and damage as a result of any violation of the noncompetition provision? (C) Was the Redemption Agreement a severable contract so that the noncompetition provision could be rescinded and the $10,000 consideration allocated to that provision be restored to Village Inn?

After hearing the evidence the trial court: (1) found Mr. Higdon in violation of the covenant not to compete (non-competition provision) beginning January 1974 to the date of the action (filed 22 March 1974); (2) plaintiff Village Inn had suffered no financial loss as a result of such violation; (3) denied injunctive relief, as by its terms the covenant was due to expire 10 September 1974 and injunction under those circumstances was not warranted in light of admission by plaintiff Village Inn that it had sustained, and was sustaining, no loss; (4) denied rescission of the covenant (paragraph 6 of the entire agreement) not to compete; (5) declined to award plaintiff Village Inn the sum of $10,000 for total failure of consideration by defendant Mr. Higdon competing indirectly within the convenanted period on the ground it could not grant partial rescission of an entire transaction and plaintiff had not sought relief by way of total rescission of the whole transaction; and finally, (6) awarded plaintiff Village Inn nominal damages in the sum of $5.00.

The trial court further found that to enforce the noncompetition provision only, would be a partial rescission of the Redemption Agreement when the noncompetition provision therein was made in conjunction with the redemption of the stock of defendant and wife, Gerda G. Higdon. The trial court also ruled there may be no partial rescission of the noncompetition covenant alone.

The assignments of error present this question for review: (1) Is the covenant not to compete severable from the agreement for redemption of the stock thus entitling Village Inn to rescind the covenant and have restored to it the $10,000 consideration when the covenant is violated by defendant Mr. Higdon? We answer in

the negative, therefore need not discuss the validity of Higdon's contention that the covenant is an unreasonable restraint of trade prohibited by Code of Ala., Tit. 9, §§ 22, 23.

■ Village Inn urges that the findings of fact of the trial court be reviewed, and it be reversed in its conclusions based thereon, for such findings not having support in the evidence. This we may do only if the findings of the trial court are clearly erroneous. Rule 52(a), ARCP; *Eubanks v. Richards,* 294 Ala. 30, 310 So.2d 883. The inquiry is thereby limited to whether there was credible evidence to support the finding that, under applicable law, the Redemption Agreement was an expression in writing of a contract relating to a single, entire transaction of which the covenant not to compete was an integral, nonseverable part?

■ The record contains ample evidence from which the trial court could deduce that, according to the intention of the parties and the subject matter of the "REDEMPTION AGREEMENT" such was an entire contract, not a severable one. The objective of the parties, when entering into negotiations, was the transfer of stock of Village Inn owned by Higdon *and* wife from them to the Village Inn Corporation. This was the entirety of the transaction. The terms and conditions attendant upon that transfer were integral parts of the whole. The covenant by Mr. Higdon not to compete was simply a nonseverable incident condition, term or part. It is clear from the evidence that Village Inn would not have agreed to purchase the Higdons' stock absent Charles Higdon's agreement not to compete. Concomitantly, Higdon most certainly would not have so agreed except as a condition to the sale of stock by him and Mrs. Higdon.

■ The apportionment or allocation of stated consideration to the noncompetition provision is not persuasive to the conclusion that the contract was severable. There was evidence from which the trial

court could properly conclude that Village Inn found tax advantage in so doing rather than intending such to make the agreement severable and susceptible of rescission as to the noncompetition provision. The general history of these covenants show they are made only in conjunction with other agreements, generally sale of goodwill or employment contracts. See Blake, Employee Agreements Not to Compete, 73 Harv.L.Rev. 625 (1960). As noted, the trial court found, and the record supports such finding, that the apportionment of the $10,000 to the covenant was made, in part, for tax advantage to Village Inn.

Although not cited by either party to this appeal we should point out the inaptness of *Blythe v. Embry,* 36 Ala.App. 596, 61 So.2d 142, to the case under consideration. In that case it was said:

> "The consideration to be paid, and not the subject or thing to be performed, determines whether a contract is entire or severable. If it is expressly, or by implication, apportioned, the contract is severable. *Kirkland v. Oates,* 25 Ala. 465."

Under the facts, within the context of the issues, the quoted rule was decisive in that case. The errors assigned in *Blythe* related to refusal of the trial court to give certain charges requested by appellant Blythe (defendant below), those charges being affirmative in nature. It was a suit on the common counts by appellee Embry (plaintiff below) seeking recovery of monies claimed due under an oral severable contract. Blythe contended that an oral entire contract was entered into between the parties with different terms than those which would make it a severable one. There was a direct conflict as to which was the real contract and that question of fact was for the jury. The jury accepted the version of appellee Embry. The quoted statement was followed without intervening comment by these words: "Thus, if appellee's version be accepted, the contract was severable * * *." By the conflict in evidence

as to the "versions" of the contract the additional factors *to be* considered in determining severability of a contract *were necessarily* considered by the jury. Those additional factors were, intention of the parties and subject matter of the contract. *Worthington v. Gwin,* 119 Ala. 44, 24 So. 739 (1898). See also 6 Williston on Contracts, § 860 (3d Ed., 1962), p. 255.

" 'The divisibility of the contract does not alone depend upon the multiplicity or the separability of the items therein, but upon the intention of the parties and *the object of the contract.* If it was the intention of the parties to treat the contract as an entire contract, and it appears that their engagements would not have been entered into except upon the clear understanding that the full object of the contract should be performed, it is not a divisible contract * * *' " 6 Williston on Contracts, § 862, p. 271 (emphasis added).

 We hold that the divisibility of a contract depends on the intention of the parties as found from the apportionability of the contract's consideration, the subject matter and object of the entire contract, and any other pertinent facts surrounding its making at the time it was made. While the consideration on both sides of the contract is *capable* of apportionment, these other factors preponderately indicate it was not the intention of the parties that the covenant not to compete be severable from the other provisions of the stock Redemption Agreement.

It follows that the judgment of the learned trial judge holding he could not grant partial rescission of the contract was correct since the contract provisions were not divisible, *Americanized Finance Corp. v. Yarbrough,* 223 Ala. 266, 135 So. 448 (1931). The extreme circumstances which might justify partial rescission of such a contract were not present. *Woodlawn Theatre Co. v. Continental Securities Corp. of Alabama,* 237 Ala. 88, 185 So. 763 (1939).

By its own admission Village Inn suffered no actual loss, therefore no damages were proved. The contract was entire, therefore no partial rescission was permissible; ergo no restitution of consideration was required and nominal damages for the breach of the covenant not to compete were sufficient.

Affirmed.

HEFLIN, C. J., and BLOODWORTH, FAULKNER and ALMON, JJ., concur.