TORBERT, Chief Justice.
This case concerns the ownership of approximately 110 acres of property in Shelby County, Alabama. The trial court, hearing the evidence presented ore tenus, held that fifty to fifty-five acres of the land had been released by the plaintiffs to the defendants, ordered the defendants to pay $10,000.00 on a past due note, plus interest, to the plaintiffs, and ordered the defendants to recon-vey the remaining property to the plaintiffs. The plaintiffs, John Allen Woodard (John) and Pauline Woodard, appeal. For the reasons set out below, we affirm.
The case arose out of a real estate transaction between John and his nephew, Albert LeWayne Woodard (Wayne). In this transaction, John and his wife contracted on December 29, 1976, to convey to Wayne and his wife, Gloria June Woodard, approximately 110 acres of property. A warranty deed, the purchase money note, and a mortgage were all executed and delivered at that time. The contract agreement stated that Wayne would pay $100.00 as earnest money and would execute a promissory note and purchase money mortgage for $125,-000.00. This note was payable in yearly installments with $50,000.00 to become due on December 29, 1977, $10,000.00 to become due on December 29, 1978, $30,000.00 to become due on December 29, 1979, $30,-000.00 to become due on December 29, 1980, and a final payment of $29,974.51 to become due on December 29, 1981. One important aspect of the contract was that upon payment of each installment, a specified portion of the 110 acres would be released from the plaintiffs’ mortgage. Further, the contract stated that Wayne, as the purchaser, would obtain title insurance in the amount of the purchase price and if the title insurance “does not show a good and merchantable title, free of encumbrances, unless herein excepted, then, and in said event Purchasers and Sellers agree that Purchasers may void the purchase money first mortgage and promissory note given. .. . ”
Though the first annual payment was not due for another year after the signing of the contract, Wayne began making smaller, varying payments to John throughout 1977 at irregular intervals. The evidence showed that one week after the first installment was due, the defendants paid to the plaintiffs two checks totalling $18,590.00. The evidence showed that this brought the total paid to the plaintiff to approximately $40,000.00. At this time, Wayne signed a $10,000.00 note to the plaintiffs upon agreeing that this would suffice as temporary payment until the next payment became due on December 29, 1978.
One of the defendants, Wayne, testified that upon receipt of the two checks and the note, the plaintiffs signed a document entitled “Partial Satisfaction of Recorded Lien,” releasing fifty to fifty-five acres, of the tract from the. mortgage. This document was notarized at a local bank. The description of the property released by this document was identical to that property described in the original contract that was to be released after payment of the first installment.
Subsequent to the signing of this partial release, the defendants attempted to use this property to secure a loan so as to *1062 renovate a dwelling thereon. The prospective lender required title insurance, however, and when Wayne attempted to secure such title insurance, problems arose due to numerous questions in the chain of title. Wayne testified that he hired three different law firms in attempts to clear the title, and an attorney for the title company testified that that company had spent over eighty man-hours in a futile attempt to clear the title.
Wayne testified that as a result of these title problems, he decided to rescind the contract with his Uncle John as allowed under the contract. Upon explaining the problems with the title to John, Wayne testified that John expressed his children’s desire to move back onto the property to build a house and said that he had a prospective buyer for another part of the land. Although John denied that he had agreed to rescind the contract as to the remainder of the unreleased property, he did admit that he and his children had moved back onto the property, had begun cutting timber thereon, and had begun to pay the property taxes thereon.
Wayne proceeded to file a bill to quiet title in February 1979 to the property released. A default judgment was taken the following June in Wayne’s favor. He then went to a mortgage company to borrow money on the property to renovate the structure on that property. It was discovered, however, in the process of examining the deed and release, that errors existed in the legal descriptions, which described land that was not part of the tract.
Defendants then took to John and his wife a corrective deed and a corrective partial release to sign, in order to correct the faulty descriptions in the original contract and release. These documents were executed and notarized; they described fifty to fifty-five acres of the tract contained in the original conveyance.
Plaintiffs subsequently filed this action, charging that the defendants were in default under the terms of the purchase money mortgage, charging that the defendants obtained releases of real property in the mortgage by fraudulently representing to the plaintiffs that the instruments were needed to obtain title insurance, praying for a judgment of $500,000.00, and asking that the releases be set aside. The trial court held, however, that the release was valid, there being no evidence of fraud, but ordered the defendants to reconvey the remainder of the 110-acre tract, upon which payment was found to be in default, to the plaintiffs, and to promptly pay to plaintiffs the past due $10,000.00 note, plus interest. Plaintiffs appeal this decision and we affirm.
This Court will presume correct the findings of the trial court when the case is presented ore tenus. The trial court’s judgment will not be disturbed on appeal if it is supported by the evidence or any reasonable inference therefrom, unless it is plainly and palpably erroneous and manifestly unjust. Knapp v. Knapp, 392 So.2d 527 (Ala.1981); Mayo v. Andress, 373 So.2d 620 (Ala.1979); Kjelstrom v. First National Bank of Montgomery, 335 So.2d 647 (Ala.1976). There is no doubt that sufficient evidence was presented to support the trial court’s findings.
The plaintiffs contend that the defendants perpetrated a fraud on them in connection with the execution of the corrective partial release. To establish a cause of action for fraud, the plaintiffs must prove that the defendant knowingly made a false representation of a material, existing fact on which the plaintiffs relied and acted to their detriment. Ames v. Pardue, 389 So.2d 927 (Ala.1980); Roberts v. Carroll, 377 So.2d 944 (Ala.1979). Here, the facts indicate that the acts of the defendants did not constitute fraud. Indeed, the evidence strongly suggests that the defendants wanted only to correct the errors in the original contract description of the property subsequently released to them after they had made the required payments of the first year. The description of the property contained in the corrective deed was identical to the description found in the corrective partial release. It described about fifty to fifty-five acres of that land in the *1063 original conveyance, with corrections to exclude property that was included in the original conveyance, but that was not owned by John Woodard. Wayne explained to the plaintiffs what they were signing and showed them on the map what property was involved. John admitted that when he took the instruments to be notarized, he told the notary that he knew what he was signing. The corrective release given to the defendants was only a correction to properly describe that property that should have been released after the completion of payment of the first installment. Thus it is evident that there was ample evidence to support the trial court’s finding that no fraud existed.
Plaintiffs also contend that it was error for the trial court to hold that the parties entered into a valid agreement to rescind the contract for sale of the property and, in the alternative, if such contract was rescinded, then it should have been totally rescinded, forcing the defendants to recon-vey all 110 acres to the plaintiffs. These contentions are without merit.
The sales contract stated that if the title insurance showed no good and merchantable title, free of encumbrances, then the purchase money first mortgage could be voided. When the defendants could not obtain this title insurance, due to numerous problems in the chain of title, the defendants had an unquestionable right to rescind their agreement and to cancel the indebtedness. Wayne then explained to John that he was having trouble obtaining title insurance and that this would prevent him from continuing with the payments. From that point, the plaintiffs reclaimed possession of the unreleased property, their children moved back onto the property, they cut timber on the property, they paid taxes on the property, and they exercised other incidents of ownership. These acts, in addition to the signing of the corrective instruments, suggested, as stated by the trial court, that “the final intent of the parties was to convey the realty which was released to defendants and for a retention of the balance of the property by the plaintiffs.”
Plaintiffs also contend that in order for there to be a rescission of the contract, the defendants “cannot hold onto such part of the contract as may be desirable on [their] part and avoid the residue, but must rescind in toto, if at all.” Thompson v. Fourth Nat. Bank of Montgomery, 214 Ala. 452, 108 So. 69 (1926). While this is a true statement of contract principles in Alabama, it has no application to contracts that are of themselves divisible in nature. The divisibility of a contract is dependent upon the intent of the parties “as found from the apportionability of the contract’s consideration, the subject matter and object of the entire contract, and any other pertinent facts surrounding its making.” Village Inn Pancake House of Mobile, Inc. v. Higdon, 294 Ala. 378, 318 So.2d 245 (1975). It is clear that the contract in the present case was divisible. The original sales contract provided for a release from the purchase money mortgage of a certain, specifically described portion of the property after the payment of each installment. This clearly shows that the parties intended the contract to be divisible and considered each parcel to be a completed sale upon payment of the installment. When Wayne completed the 1977 installment by paying approximately $40,000.00 in cash and signing a $10,000.00 note, the property described in the contract was released and the sale as to that parcel was complete.
We have reviewed plaintiffs’ other contentions and find them completely without merit and subject to the same rules of law as stated above. We find that the holding of the trial court was based upon competent and supporting evidence. For these reasons, the decision of the trial court is due to be affirmed.
AFFIRMED.
FAULKNER, ALMON, EMBRY and ADAMS, JJ., concur.